# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 14, 2012                Decided May 8, 2012

No. 11-5161

VIRGINIA DEPARTMENT OF MEDICAL ASSISTANCE SERVICES,
APPELLANT

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES AND KATHLEEN SEBELIUS, SECRETARY OF THE
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN
SERVICES,
APPELLEES

Consolidated with 11-5242

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-cv-00392)
(No. 1:09-cv-01587)

*Caroline M. Brown* argued the cause for the appellants. *Laura E. Schattschneider* was on brief.

*Dana Kaersvang,* Attorney, United States Department of Justice, argued the cause for the appellees. *Tony West*, Assistant Attorney General, *Ronald C. Machen*, *Jr.*, United States Attorney, and *Michael S. Raab*, Attorney, were on brief. *R.*

*Craig Lawrence*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Virginia Department of Medical Assistance Services and the Kansas Health Policy Authority (collectively, States) both appeal the district court's grants of summary judgment in favor of the U.S. Department of Health and Human Services and the Secretary of Health and Human Services (HHS or Secretary). *See Va. Dep't of Med. Assistance Servs. v. U.S. Dep't of Health & Human Servs.*, 779 F. Supp. 2d 129 (D.D.C. 2011) (*Virginia v. HHS*); *Kan. Health Policy Auth. v. U.S. Dep't of Health & Human Servs.*, 798 F. Supp. 2d 162 (D.D.C. 2011) (*Kansas v. HHS*). The district court upheld HHS's disallowance of certain Medicaid claims for Federal Financial Participation (FFP) as ineligible for "medical assistance" under the "Institution for Mental Diseases" (IMD) exclusion set forth in section 1905(a) of 42 U.S.C. §§ 1396 *et seq.* (Medicaid Statute).[1] The IMD exclusion generally carves out from FFP any claims for

---

[1] The Medicaid Statute "defines 'medical assistance' as 'payment of part or all of the cost' of medical 'care and services' for a defined set of individuals." *Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 180 (D.C. Cir. 2008) (quoting 42 U.S.C. § 1396d(a)). Under the Medicaid program, each state furnishes medical assistance to its eligible residents and the federal government covers a portion of the state's costs through FFP. *Bowen v. Massachusetts*, 487 U.S. 879, 883-84 (1988) (noting, although "federal contribution to a State's Medicaid program is referred to as a 'reimbursement,' the stream of revenue is actually a series of huge quarterly advance payments that are based on the State's estimate of its anticipated future expenditures . . . . periodically adjusted to reflect actual experience").

"payments with respect to care or services for any individual who has not attained 65 years of age and who is a patient in an institution for mental diseases." 42 U.S.C. § 1396d(a)(B). In particular, HHS excluded the States' claims as outside the narrow statutory exception to the IMD exclusion for "inpatient psychiatric hospital services for individuals under age 21" (under-21 exception). *Id*. § 1396d(a)(B), (16). Because HHS correctly concluded that the disputed claims are not eligible for FFP under the plain language of the IMD exclusion and the under-21 exception, we affirm the court's grants of summary judgment in HHS's favor.

**I.**

The Congress enacted the Medicaid Statute in 1965 to provide federal financial assistance to states that reimburse certain costs of medical treatment for needy persons pursuant to an approved state medical assistance plan, which plan identifies the groups of individuals eligible for assistance as well as the services that are covered. *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 650-51 (2003). Section 1905(a) of the Medicaid Statute, 42 U.S.C. § 1396d(a), sets out which "care and services" are eligible for "medical assistance" (and consequently for FFP) under a state plan. Since its enactment in 1965, section 1905(a) has generally excluded from medical assistance any services provided to individuals in an IMD who are not age 65 or older. Social Security Amendments of 1965, Pub. L. No. 89-97, title I, § 121(a)(B), 79 Stat. 286, 351-52 (1965) (codified at 42 U.S.C. § 1396d(a)(B)).

In 1972, the Congress added an exception to the IMD exclusion aimed at individuals under age 21. Section 1905(a)(B) now excludes services for individuals under 65 "except as otherwise provided in paragraph (16)." 42 U.S.C. § 1396d(a)(B). Paragraph (16) identifies "inpatient psychiatric hospital services for individuals under age 21, as defined in subsection (h)," as among the services for which medical

assistance is expressly authorized. *Id*. § 1396d(a)(16). Subsection (h), in turn, defines "inpatient psychiatric hospital services for individuals under age 21" in some detail, to

include[] *only*—

(A) inpatient services which are provided in an institution (or distinct part thereof) which is a psychiatric hospital as defined in section 1395x(f) of this title or in another inpatient setting that the Secretary has specified in regulations;

(B) inpatient services which, in the case of any individual (i) involve active treatment which meets such standards as may be prescribed in regulations by the Secretary, and (ii) a team, consisting of physicians and other personnel qualified to make determinations with respect to mental health conditions and the treatment thereof, has determined are necessary on an inpatient basis and can reasonably be expected to improve the condition, by reason of which such services are necessary, to the extent that eventually such services will no longer be necessary; and

(C) inpatient services which, in the case of any individual, are provided prior to (i) the date such individual attains age 21, or (ii) in the case of an individual who was receiving such services in the period immediately preceding the date on which he attained age 21, (I) the date such individual no longer requires such services, or (II) if earlier, the date such individual attains age 22; . . . .

42 U.S.C. § 1396d(h)(1)(A)-(C) (emphasis added).

In 2001-02, the HHS Inspector General audited Medicaid claims for IMD residents under age 21 in several states—including Virginia. As a result of the audit, the Centers for Medicare and Medicaid Services (CMS)[2] disallowed FFP claims totaling $3,948,532 from Virginia as not authorized by the under-21 exception because they were not documented to be for "psychiatric hospital services provided in and by an IMD." Letter from Ted Gallagher, Assoc. Rgn'l Adm'r, Div. of Medicaid & Children's Health Operations, CMS, to Patrick W. Finnerty, Dir., Va. Dep't of Med. Assistance Servs., at 2 (Feb. 29, 2008) (CMS Virginia Letter).[3] Subsequently, following an audit of Kansas's 2007-08 claims, CMS similarly disallowed $3,883,143 of FFP claims because they were for "services other than inpatient psychiatric services to residents of a [Psychiatric Residential Treatment Facility (PRTF)]." Letter from James G. Scott, Assoc. Rgn'l Adm'r, Div. of Medicaid & Children's Health Operations, CMS, to Marcia J. Nielsen, Exec. Dir., Kansas Health Policy Auth., at 2 (Oct. 20, 2008) (CMS Kansas Letter).[4] Virginia and Kansas both appealed to HHS's

---

[2]CMS is the agency that administers the Medicaid program on behalf of the Secretary. *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. at 650 n.3.

[3]Virginia's disallowed claims included claims for "physician services, pharmacy, outpatient hospital clinics, inpatient acute care, and a miscellaneous category including primarily laboratory, x-ray and community mental health and mental retardation services." CMS Virginia Letter at 2.

[4]PRTFs "are non-hospital facilities that, by regulation, may provide inpatient psychiatric treatment to children in Medicaid." *Kansas v. HHS*, 798 F. Supp. 2d at 164 n.3. All of Kansas's disallowed claims were for services provided to residents of PRTFs. CMS Kansas Letter at 1.

Departmental Appeals Board (DAB).

The DAB rejected Virginia's challenge to "CMS's determination that the exception applies only to 'inpatient psychiatric services.' " *Va. Dep't of Med. Assistance*, DAB Dec. No. 2222, at 1 (App. Div. Dec. 31, 2008). In particular, the DAB declined Virginia's invitation to reconsider its earlier decision in *New York State Department of Health*, DAB Dec. No. 2066 (App. Div. Feb. 8, 2007). *Va. Dep't of Med. Assistance*, DAB Dec. No. 2222, at 2-3. In *New York State*, which arose from the multi-state 2001-02 audit, the DAB upheld CMS's interpretation of the IMD exception's "plain language," as applied by the HHS Inspector General, that paragraph (16) "provides for only one category of Medicaid service—inpatient psychiatric hospital services for individuals under age 21 as defined in subsection (h)" and that subsection (h) "in turn defines those services to mean 'only' those inpatient services that are provided under the direction of a physician in an institution that qualifies and that meet other specified requirements." *New York State*, Dec. No. 2066, at 9-10. Accordingly, the DAB rejected New York's contention that " 'if the eligible individuals happen to be under the age of 21, in addition to the other benefits set out in the statute, they are *also* entitled to receive inpatient psychiatric hospital services.' " *Id.* at 9 (quoting New York State brief). Consistent with *New York State*, the DAB upheld CMS's disallowance of Virginia's IMD claims. *Id.* at 26. In the Kansas appeal, the DAB likewise upheld the disallowance explaining that it "ha[d] previously held that the statutory exception to the IMD exclusion is available only for services, provided in and by a qualifying facility, meeting the statutory and regulatory requirements for 'inpatient psychiatric facility services' " and that CMS had "determined that the health care services at issue were not part of [such] inpatient services." *Kan. Health Policy Auth.*, DAB Decision No. 2255, at 1-2 (App. Div. June 23, 2009).

Virginia and Kansas then filed these actions in the district court, challenging HHS's interpretation of the IMD exclusion and its under-21 exception and the disallowance of the States' claims based thereon. The district court granted summary judgment in favor of HHS in both cases. In *Virginia v. HHS*, the district court agreed with HHS that "the relevant statutory language is unambiguous." 779 F. Supp. 2d at 135. The court specifically found that (1) the IMD exclusion "is clear: except as provided in paragraph (16), FFP is not available for any medical care for any individual under age 65 who is a patient in an IMD" and (2) the " 'under–21 exception' to the IMD exclusion is equally clear: FFP is only available for inpatient psychiatric hospital services for individuals under age 21 that are provided in an IMD." *Id*. at 135-36. In *Kansas v. HHS*, the court summarily rejected Kansas's challenge, declining to "revisit its ruling on this issue" in *Virginia v. HHS*. 798 F. Supp. 2d at 164. Virginia and Kansas both filed timely notices of appeal and the two appeals were consolidated.

## II.

"We review the district court's grant of summary judgment *de novo* pursuant to the Administrative Procedure Act and therefore will uphold the Secretary's decision unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A)." *Pharm. Research & Mfrs. of Am. v. Thompson*, 362 F.3d 817, 821 (D.C. Cir. 2004). We review the Secretary's interpretation of the Medicaid Statute under the familiar two-step framework set out in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984). *Id*. at 821-22.

> Under *Chevron* step 1, if the "Congress has directly spoken to the precise question at issue . . . , that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Under *Chevron* step 2, "if the statute is

silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*U.S. Postal Serv. v. Postal Regulatory Comm'n*, 640 F.3d 1263, 1266 (D.C. Cir. 2011) (quoting *Chevron*, 467 U.S. at 842-43) (citation omitted).  We stop, as did the district court, at *Chevron* step 1 because we conclude the unambiguous statutory language excepts from the IMD exclusion only "inpatient psychiatric hospital  services" as defined in subsection (h).

As we noted above, section 1905(a) sets out a list of services eligible for "medical assistance" for which FFP is available, 42 U.S.C. § 1396d(a)(1)-(29), and expressly excludes therefrom "any [] payments with respect to care or services for any individual . . . who is a patient in an institution for mental diseases," *id*. § 1396d(a)(B)—with two specific exceptions: (1) the broad exception for any individual who "has . . . attained 65 years of age," *id*.; and (2) the narrow exception "as otherwise provided in paragraph (16)," *id*., that is, "effective January 1, 1973, inpatient psychiatric hospital services for individuals under age 21, as defined in subsection (h)." *Id*. § 1396d(a)(16). Subsection (h), quoted *supra* p. 4, establishes in its three separate subsections three discrete criteria that specific services must meet to qualify as "inpatient psychiatric hospital services" eligible for medical assistance: they must (1) be "inpatient" services "provided in . . . a psychiatric hospital" or regulatory equivalent; (2) "involve active treatment" which is "determined [to be] necessary on an inpatient basis and can reasonably be expected to improve the [mental health] condition, by reason of which such services are necessary, to the extent that eventually such services will no longer be necessary"; and (3) be performed before the patient turns 21 or, if performed immediately before he turns age 21, cease no later than the date he turns 22.  42 U.S.C. § 1396d(h)(1)(A)-(C).  Given the unambiguous meaning

of the first two requirements, HHS correctly disallowed Virginia's claims for which Virginia "did not document that the . . . costs were for 'inpatient psychiatric hospital services,' " CMS Virginia Letter at 3, and Kansas's claims that were "for services other than inpatient psychiatric services to residents of a PRTF." CMS Kansas Letter at 2.

The States assert the IMD exception is indeed ambiguous "as to whether the phrase 'except as otherwise provided in paragraph (16)' refers to the *services* described in that paragraph or to the *individuals receiving those services*." Appellants' Br. 25. If the latter, they contend, the requirement that services be those defined in subsection (h) may be read simply to establish a baseline for a patient in an IMD to receive all manner of FFP-eligible medical assistance set out in section 1905(a)(1)-(29)—so long as the patient receives any qualifying "inpatient psychiatric hospital services," the States maintain, all of his medical services are then eligible for medical assistance and FFP. *See* Appellants' Br. 32-33 ("In the States' view, therefore, far from limiting the scope of the exception to just that one service, the initial prepositional phrase of the exclusion ensures that Medicaid would pay for services for children in IMDs only when the inpatient psychiatric services they received met the high treatment standard set forth in Section 1396d(h)."). We disagree. The excepting language refers quite specifically to an "except[ion] as otherwise provided in paragraph (16)" and paragraph (16) simply and unambiguously lists among the services eligible for medical assistance "effective January 1, 1973, inpatient psychiatric hospital services for individuals under age 21, as defined in subsection (h)." Such services therefore are the only ones covered by the language of the under-21 exception—all other services to individuals in IMDs and under age 65 remain excluded. This is what the Congress said and this is therefore what we presume the Congress meant. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what

it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon [of construction] is also the last: judicial inquiry is complete." (citations and quotation marks omitted)). To overcome this plain meaning presumption, the States "must 'show either that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it.' " *Performance Coal Co. v. Fed. Mine & Health Review Comm'n*, 642 F.3d 234, 238 (D.C. Cir. 2011) (quoting *Engine Mfrs. Ass'n v. U.S. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996)). The States have not made such a showing.

The States first assert that the structure of the Medicaid Statute supports their interpretation, pointing to the "comparability principle" embodied in section 1396a(a)(10), which, inter alia, requires that the medical assistance to any individual meeting listed eligibility requirements "shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual." 42 U.S.C. § 1396a(a)(10)(B)(i). They contend that if the Congress had wanted to limit IMD services to inpatient psychiatric hospital services, it would have done so expressly in the comparability provision—section 1396a(a)(10)—as it did when establishing other exceptions thereto. *See, e.g.*, *id.* § 1396a(a)(10)(G)(VII) (limiting medical assistance available to certain women during pregnancy to "medical assistance for services related to pregnancy (including prenatal, delivery, postpartum, and family planning services) and to other conditions which may complicate pregnancy"). Notwithstanding its practice in other contexts, however, in this instance, logically enough, the Congress set out the exception in the subsection already containing the exclusion itself—42 U.S.C. § 1396d(a)—and it did so in unambiguous terms.

The States next contend the legislative history supports its interpretation but we find the cited history at best inconclusive. The committee report on the 1972 act on which the States rely expresses an intent to "authorize Federal matching under medicaid for eligible children, age 21 or under, receiving active care and treatment for mental diseases in an accredited medical institution" (with controls "to assure that the new Federal dollars are utilized to improve and expand treatment of mentally-ill children") in an "effort to restore mentally ill children to a point where they may very well be capable of rejoining and contributing to society as active and constructive citizens." S. Rep. No. 92-1230, at 281 (U.S. Sen. Comm. on Fin.). This language sheds little light on whether, as the States contend, matching funds are available for services *other than* those expressly cited: "active care and treatment for mental diseases in an accredited medical institution." Thus, "[t]his case does not present the very rare situation where the legislative history of a statute is more probative of congressional intent than the plain text." *Consumer Elecs. Ass'n v. FCC*, 347 F.3d 291, 298 (D.C. Cir. 2003); *see also Natural Res. Def. Council v. EPA*, 489 F.3d 1250, 1259 (D.C. Cir. 2007) ("It is true . . . that we may examine the statute's legislative history in order to shed new light on congressional intent, notwithstanding statutory language that appears superficially clear. But the bar is high . . . ." (first ellipsis in original; internal quotation marks and citations omitted)).

The States also assert HHS's own regulations are consistent with—and therefore support—the States' interpretation of the under-21 exception. The recent regulations they cite, however, are no more compelling than the legislative history as they too are fully consistent with HHS's narrow, plain meaning interpretation of the exception to include only inpatient psychiatric hospital services. *See* 42 C.F.R. § 441.13(a)(2) ("FFP is not available in expenditures for services for . . . [a]ny individual who is under age 65 and is in an institution for mental

diseases, *except an individual who is under age 22 and receiving inpatient psychiatric services under Subpart D of this part*.") (emphasis added); 42 C.F.R. § 435.1009(a)(2) ("FFP is not available in expenditures for services provided to . . . [i]ndividuals under age 65 who are patients in an institution for mental diseases *unless they are under age 22 and are receiving inpatient psychiatric services under § 440.160 of this subchapter*.") (emphasis added). The regulations are "eligibility provision[s] which simply recognize[] that the broad ineligibility that results from the IMD exclusion does not apply to children receiving inpatient psychiatric services authorized under section 1905(a)(16) of the Act" and are "silent on whether, once a child is receiving those services, FFP is available for other services as well." *Va. Dep't of Med. Assistance*, DAB Dec. No. 2222, at 15. As we have explained, this question is answered by the unambiguous language of paragraph (16) and subsection (h).[5]

---

[5]Moreover, HHS has plainly expressed its interpretation of the under-21 exception in rulemakings and in its own manual. *See* Medicaid Program; Federal Financial Participation for Inmates in Public Institutions and Individuals in an Institution for Mental Disease or Tuberculosis, 48 Fed. Reg. 13,446, 13,446 (Mar. 31, 1983) ("Section 1905(a) of the Social Security Act prohibits Federal payments for services provided to inmates of public institutions, or individuals under age 65 who are patients in an institution for mental diseases or tuberculosis except for inpatient psychiatric services received by individuals under age 22."); Medicaid Program; Inpatient Psychiatric Services for Individuals Under Age 21, 59 Fed. Reg. 59,624, 59,625 (Nov. 17, 1994) ("Under section 1905(a) of the Act, Medicaid payment is generally not available for any services provided to individuals under age 65 who are patients in [IMDs]. . . . The psychiatric\21 benefit, at section 1905(a)(16) of the Act, is the only statutory exception to the IMD exclusion."); State Medicaid Manual § 4390.A.2 (1994) ("The IMD exclusion . . . states that FFP is not available for any medical assistance under title XIX for services provided to any individual who is under age 65 and who is a patient

Finally, the States argue that the Secretary's narrow interpretation of the under-21 exception is at odds with other provisions of the Medicaid Statute. We again find their arguments unpersuasive. None of the statutory provisions they cite suggests we should ignore the plain meaning of the statutory IMD exclusion and its under-21 exception. *See U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 494 (D.C. Cir. 2004) (" '[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.' " (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004))).

The States first cite Medicare provisions which authorize FFP for "early and periodic screening, diagnostic, and treatment services [EPSDT] . . . for individuals who are eligible under the plan and are under the age of 21," 42 U.S.C. § 1396d(a)(4)(B); *see also id*. § 1396d(r)(5); and one provision which previously imposed a financial penalty on any state failing to provide such services. *See* Social Security Amendments of 1972, Pub. L. No. 92-603, § 299F, 86 Stat. 1329, 1463 (1972) (formerly codified at 42 U.S.C. § 403(g)). That the Medicaid Statute generally encourages or even requires such screening does not negate the unambiguous exclusion from FFP of all IMD services for individuals under 65 except "inpatient psychiatric hospital services for individuals under age 21." 42 U.S.C. § 1396d(a)(16). The statutory language makes no exception for EPSDT services.[6]

---

in an IMD unless the payment is for inpatient psychiatric services for individuals under age 21."). Based on these documents, we reject the States' assertion that HHS failed to provide sufficient notice of its interpretation. *See* Appellants' Br. 52-53.

[6]In fact, when the Congress first enacted EPSDT coverage for eligible children in 1968 (effective July 1, 1969), it is undisputed that the IMD exclusion prohibited all medical assistance to IMD residents

The States also rely on section 1396a(a)(10)(C)(iv), which provides that if a state plan provides medical assistance for any of the eligible groups listed in section 1396d(a) that includes "services in institutions for mental diseases or in an intermediate care facility for the mentally retarded (or both) for any such group, it also must include for all groups covered at least the care and services listed in [paragraphs (1)-(5) and (17) of 42 U.S.C. § 1396d(a)] or the care and services listed in any 7 of [paragraphs 1-24] of such section." The States interpret this language to mean that if they provide any services in an IMD to a specific covered group, they must also provide the additional referenced services set out in section 1396d to the same group—contrary to HHS's claimed limitation of IMD services to inpatient psychiatric hospital services. Appellants' Br. 43-44. HHS, however, reasonably reads the same provision—consistent with the IMD exclusion—to require that "[s]tates may only use federal funding for services in institutions for mental diseases if they already cover a wide range of services for 'all groups covered.' " Appellees' Br. 21. We think HHS's interpretation, which maintains the integrity of each provision, is the better reading. *See Ricci v. DeStefano*, 129 S.Ct. 2658, 2699 (2009) ("Our task in interpreting separate provisions of a single Act is to give the Act the most harmonious, comprehensive meaning possible in light of the legislative policy and purpose." (internal quotation marks and alteration omitted)). In any event, the language of section 1396a(a)(10)(C)(iv) does not plainly contravene the unambiguous language of the IMD exclusion and its exception.

---

under age 65—including EPSDT—and that remained the case until 1972 when the Congress added the limited under-21 exception for "inpatient psychiatric hospital services" only. *See* Social Security Amendments of 1967, Pub. L. No. 90-248, § 302(a), 81 Stat. 821, 929 (1968).

Finally, the States argue that HHS's single-service restriction for IMD funding frustrates the Congress's intent in authorizing waivers for individuals with chronic mental illness to receive care in a home- and community-based treatment environment in lieu of an IMD—provided the alternative care is cost-neutral. *See* 42 U.S.C. § 1396n(c). Because the home- or community-based care is provided outside an IMD and is therefore not subject to the IMD exclusion, such alternative care, the States contend, necessarily provides more services at a higher cost than the limited services HHS allows pursuant to the under-21 exception. Thus, they maintain, obtaining a waiver cannot be cost neutral. HHS responds, however, that the cost of the additional services available in home- or community-based care might be offset by the elimination of room-and-board costs incurred in an IMD. In short, we cannot know from the present record how often waivers may be cost-neutral and therefore permissible. What we do know is that the plain language of the provision that directly addresses services to IMD residents under age 21—namely, the narrow under-21 exception to the IMD exclusion which was already well-established when the waiver provision was extended to cover "chronic mental illness" in 1986—unambiguously limits IMD medical assistance to inpatient psychiatric hospital services. *See* Omnibus Budget Reconciliation Act of 1986, Pub. L. No. 99-509, § 9411(d), 100 Stat. 1874, 2061-62 (1986). There is no indication, that the Congress intended to alter the exception's established scope at that time.

In sum, the longstanding IMD exclusion, as amended by paragraph (16)'s under-21 exception, plainly and unequivocally limits Medicaid medical assistance for individuals in IMDs under age 21 to claims for "inpatient psychiatric hospital services" as defined in subsection (h) of section 1396d(a). This restriction may not reflect the most compassionate or even the most prudent approach to treating young patients in IMDs but it marks the extent of assistance the Congress unambiguously

authorized in 1972 when it first decided to fund such services. Our role is "not to 'correct' the text so that it better serves the statute's purposes"; nor under *Chevron,* may we "avoid the Congressional intent clearly expressed in the text simply by asserting that [our] preferred approach would be better policy." *Engine Mfrs. Ass'n v. U.S. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996). The Congress has spoken plainly and our function is to "give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. Accordingly, we affirm the district court's grants of summary judgment to HHS.

*So ordered.*