# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 5, 2017　　　　　Decided July 10, 2018

No. 16-1230

DELAWARE DEPARTMENT OF NATURAL RESOURCES AND
ENVIRONMENTAL CONTROL,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

On Petition for Judicial Review of Final Action
of the United States Environmental Protection Agency

*Valerie M. Edge*, Deputy Attorney General, Office of the Attorney General for the State of Delaware, argued the cause and filed the briefs for petitioner.

*Phillip R. Dupré*, Attorney, U.S. Department of Justice, argued the cause for respondent. With him on the brief was *John C. Cruden*, Assistant Attorney General, at the time the brief was filed.

Before: ROGERS and GRIFFITH, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The Clean Air Act authorizes the Environmental Protection Agency to set national air-quality standards. The Act also permits the agency to extend the deadline for areas to comply with those standards. Here, the agency granted an extension for a multistate region to comply with national ozone standards. Delaware, one of the four states partially within the multistate region, petitions for review of the agency's decision. We deny Delaware's petition.

I

A

The Clean Air Act (the "Act") requires the Environmental Protection Agency (EPA) to identify pollutants that "may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7408(a)(1)(A). Pursuant to that duty, EPA formulates National Ambient Air Quality Standards (NAAQS) that identify the maximum permissible concentrations of these pollutants in the air. *See id.* §§ 7408-09. Ozone is one pollutant for which EPA has promulgated NAAQS. *See* 40 C.F.R. pt. 50.

Once EPA promulgates new or revised NAAQS, it segments the country into areas for enforcing the NAAQS. Some areas lie within a single state while others encompass portions of two or more states. EPA designates each area as "attainment," "nonattainment," or "unclassifiable" with respect to the NAAQS. 42 U.S.C. § 7407(d)(1)(A), (B). "Attainment" areas meet the relevant NAAQS; "nonattainment" areas violate the NAAQS or contribute to NAAQS violations in a nearby area; and "unclassifiable" areas are those for which EPA lacks sufficient information to determine compliance. *Id.* § 7407(d)(1)(A)(i)-(iii). EPA further divides ozone

nonattainment areas into five subcategories: marginal, moderate, serious, severe, and extreme. *Id.* § 7511(a)(1).

Once assigned a NAAQS designation, states must adopt and implement "state implementation plans" (SIPs) to attain, maintain, and enforce the NAAQS. *Id.* § 7410. SIPs adopted by states in nonattainment areas must include measures providing for attainment of the NAAQS "as expeditiously as practicable." *Id.* § 7502(a)(2)(A), (B). Every area designated as nonattainment for ozone NAAQS must come into attainment within a time period set by the Act, based on the area's ozone subcategory. *Id.* § 7511(a)(1). If a nonattainment area for ozone misses its deadline for attainment, EPA generally must bump the area up to the next most urgent subcategory and impose additional regulatory responsibilities on the states composing that area. *Id.* § 7511(b)(2)(A).

However, the Act also permits EPA to grant extensions for an area to meet its attainment deadline for ozone NAAQS. That provision reads:

> Upon application by any State, the Administrator may extend for 1 additional year (hereinafter referred to as the "Extension Year") the date specified [in the Act] if—
>
> > (A) the State has complied with all requirements and commitments pertaining to the area in the applicable implementation plan, and
> >
> > (B) no more than 1 exceedance of the national ambient air quality standard level of ozone has occurred in the area in the year preceding the Extension Year.

No more than 2 one-year extensions may be issued under this paragraph for a single nonattainment area.

*Id.* § 7511(a)(5).

B

In 2008, EPA updated the ozone NAAQS. *See* NAAQS for Ozone, 73 Fed. Reg. 16,436 (Mar. 27, 2008). EPA then designated forty-five regions across the country as nonattainment areas, including the "Philadelphia Area," taking in parts of Delaware, Maryland, New Jersey, and Pennsylvania. EPA classified the area as "marginal nonattainment" and set its attainment date for July 20, 2015.

Around the time of that date, EPA received requests from Maryland, New Jersey, and Pennsylvania for a one-year extension under 42 U.S.C. § 7511(a)(5). In their requests, Maryland and Pennsylvania certified that they had complied with their SIPs. Although Delaware had not submitted any such request, EPA proposed a rule finding the entire Philadelphia Area eligible for a one-year extension. *See* Determinations of Attainment by the Attainment Date, 80 Fed. Reg. 51,992, 51,996-97 (Aug. 27, 2015). EPA explained that under § 7511(a)(5), if "any state with jurisdiction over the nonattainment area requests such extension, the Agency will consider granting the request provided that the criteria in [§ 7511(a)(5)(A), (B)] are met for all of the governing states." In other words, EPA maintained that "application by any State" in § 7511(a)(5) could be satisfied by application of fewer than all states in a multistate nonattainment area. However, EPA also concluded an area could not qualify for an extension unless *every* state in a nonattainment area—including those that had never submitted a request—complied with its own SIP. Even though Delaware decided not to request an extension, EPA

proposed finding that the state had complied with its ozone SIP. *See* J.A. 19; *see also* 80 Fed. Reg. at 51,997 n.10.

Before granting the extension, EPA received comments from Delaware and environmental groups. Delaware commented that it "would like to support EPA's proposal because the only alternative . . . appears to be a 'bump-up' of portions of Delaware to a moderate nonattainment classification." But Delaware also criticized EPA for focusing on attainment-date extensions instead of taking direct action against ozone emissions from upwind states that Delaware believed were responsible for the Philadelphia Area's continued inability to reach attainment.

Meanwhile, the environmental groups EarthJustice and Sierra Club argued that EPA's proposed extension would be unlawful because Delaware had not joined in the request. The groups interpreted § 7511(a)(5) to permit extensions for multistate areas only when *every* state in the area applies for an extension. The groups highlighted that EPA had previously required unanimity when states in a multistate nonattainment area request a voluntary "bump-up" to a higher nonattainment subcategory. The groups also argued that an extension would be arbitrary and capricious because EPA failed to find that the four Philadelphia Area states had "complied with all requirements and commitments pertaining to the area in [their SIPs]." 42 U.S.C. § 7511(a)(5)(A). Instead, EPA unreasonably relied on self-certifications of compliance made by Maryland and Pennsylvania. Moreover, according to the groups, nothing in the record suggested Delaware or New Jersey was in compliance, and neither claimed it was.

In May 2016, EPA promulgated its final rule granting the Philadelphia Area a one-year extension to meet the 2008 ozone NAAQS. *See* Determinations of Attainment by the Attainment

Date, 81 Fed. Reg. 26,697 (May 4, 2016). EPA addressed each of the environmental groups' critiques. First, EPA explained that its decision to grant the extension was reasonable because requiring unanimity among affected states for an attainment-date extension is different than requiring unanimity when "bumping up" a classification. *See id.* at 26,701-02. In particular, extending an attainment date "imposes no additional obligation upon any state" while a voluntary reclassification "can impose significant new attainment planning and emission reduction obligations." *Id.* at 26,702.

Furthermore, EPA maintained that it could reasonably rely on Maryland's and Pennsylvania's self-certifications of SIP compliance. EPA appealed to the "state and federal partnership in implementing the [Act]" to justify the agency's reliance on the self-certifications. *Id.* at 26,704. EPA further indicated that absent any "demonstration that suggests any of the states receiving an attainment date extension are not in compliance with their SIPs . . . EPA is disinclined to invalidate the certifications made by the states." *Id.*

EPA also responded that when states fail to certify their compliance, the agency still has authority under the Act to apply "its own knowledge and expertise" and conduct an independent review. *Id.* at 26,702. EPA reviewed Delaware's and New Jersey's applicable SIPs and determined that no enforcement actions were pending against the states for noncompliance with them. Therefore, EPA concluded that both states had met the compliance requirement of § 7511(a)(5)(A). *Id.* at 26,703.

In July 2016, Delaware filed a petition for review of EPA's May 2016 rule with this court, raising essentially the same arguments made by the environmental groups during the rulemaking. We have jurisdiction under the Act. 42 U.S.C.

§ 7607(b)(1); *see also Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 879 (D.C. Cir. 2015).

II

On our own motion, we asked the parties to address whether Delaware's comments during the rulemaking precluded it from obtaining judicial review of EPA's final rule extending the attainment date for the Philadelphia Area. After hearing argument on the matter, we are persuaded that Delaware may petition this court for review of EPA's decision.

A petitioner may not "take a position in this court opposite from that which it took below, particularly when its position has prevailed before the agency." *S. Pac. Transp. Co. v. ICC*, 69 F.3d 583, 588 (D.C. Cir. 1995). Our application of this principle in *South Coast Air Quality Management District v. EPA*, 472 F.3d 882 (D.C. Cir. 2006), is instructive. Ohio had commented during an EPA rulemaking that the agency's proposed approach "would be a reasonable interpretation" of the Act. *Id.* at 891. Then, before this court, Ohio argued that the very approach it had deemed reasonable during the rulemaking was, in fact, unreasonable. *See id.* We held that Ohio's obvious about-face rendered its claims forfeited. *Id.* at 892.

Here, Delaware's comments during EPA's rulemaking are far less definitive than were Ohio's in *South Coast*. On the one hand, some of Delaware's comments suggested that Delaware supported EPA's proposal. *See* J.A. 56 (stating that Delaware "would like to support EPA's proposal" but only because the alternative was to bump up areas in Delaware to a moderate nonattainment classification). On the other hand, some of Delaware's other comments suggested opposition to EPA's proposed rule. *See id.* (describing circumstances when an

attainment-date extension would make sense but concluding "[t]his is not the case here"); J.A. 57 (criticizing EPA's focus on extending the Philadelphia Area's attainment date and urging EPA to dedicate its resources to improving air quality more directly).

Fairly read, Delaware's letter cannot reasonably support an inference that Delaware "supported" the proposed rule during the comment period. Delaware's core comments questioned the agency's tactic of delaying attainment by extending the deadline. At best, Delaware's letter is ambiguous or equivocal on whether it ultimately wanted EPA to grant an extension. Delaware's comments during the rulemaking therefore do not exhibit the sort of clear contradiction present in *South Coast*. Moreover, Delaware's comments during the rulemaking did not even address—let alone contradict—the legal arguments the state now brings before our court.

Because Delaware's current litigating position is not "opposite" to that which it took before the agency, the state has not forfeited its right to petition for judicial review. We thus proceed to the merits of Delaware's challenge.

III

A

Delaware argues that 42 U.S.C. § 7511(a)(5) precludes EPA from considering an attainment-date extension for a multistate area when not all states in the area have asked for it. Delaware's challenge to EPA's statutory interpretation is governed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). We initially determine whether Congress "has directly spoken to the precise question at issue," in which case we "give effect to the unambiguously

expressed intent of Congress." *Id.* at 842-43. If the statute is "silent or ambiguous," we then consider "whether the agency's answer is based on a permissible construction" of the statute. *Id.* at 843.

To determine whether § 7511(a)(5) is unambiguous, we "must first exhaust the 'traditional tools of statutory construction.'" *Nat. Res. Def. Council, Inc. v. Browner*, 57 F.3d 1122, 1125 (D.C. Cir. 1995) (quoting *Chevron*, 467 U.S. at 843 n.9). For example, we must look not only to "the particular statutory language at issue," but also "the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1014 (D.C. Cir. 1999). The Supreme Court has stressed time and time again that "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122 (1849)). Therefore, when one statutory provision informs the meaning of another at issue, we must apply interpretive tools to *both*. *See Halverson v. Slater*, 129 F.3d 180, 184-85 (D.C. Cir. 1997).

B

Delaware contends that the unambiguous meaning of § 7511(a)(5) provides that EPA can grant an extension of an attainment date for a multi-state area only when *every* state in that area asks for it. Because Delaware never asked to extend the Philadelphia Area's deadline, so the argument goes, EPA acted contrary to the statute. We disagree.

An attainment-date extension may be granted by EPA "[u]pon application by *any* State." 42 U.S.C. § 7511(a)(5)

(emphasis added). The parties dispute how to understand the term "any State" in the context of multistate areas. Delaware argues that "any State" means *every* state in a multistate area. EPA maintains that "any State" means that any one of the states in the multistate area can apply for an extension for the entire area.

The word "any" has an "expansive meaning" that usually indicates "*one or some* indiscriminately of whatever kind" as long as there is "no reason to contravene [its] obvious meaning." *New York v. EPA*, 443 F.3d 880, 885 (D.C. Cir. 2006) (emphasis added) (first quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997); then quoting *Norfolk S. Rwy. Co. v. Kirby*, 543 U.S. 14, 31-32 (2004)); *see also Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012); *Fin. Planning Ass'n v. SEC*, 482 F.3d 481, 488 (D.C. Cir. 2007). This expansive reach of "any" also applies when construing the Act specifically. *See New York*, 443 F.3d at 885-86; *see also Nat. Res. Def. Council v. EPA*, 755 F.3d 1010, 1019 (D.C. Cir. 2014); *New Jersey v. EPA*, 517 F.3d 574, 582 (D.C. Cir. 2008). If "any" can refer to "one or some" members of a class, then it should naturally permit EPA to grant an extension under § 7511(a)(5) when only "one or some" states in a multistate area submit an application.

That said, depending on the context, "any" can mean "every," as Delaware argues. For example, very recently, the Supreme Court held that in the context of a different statute, "as in so many others, 'any' means 'every.'" *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018). But again, when it comes to determining a term's unambiguous meaning, context is key. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). As the Court noted in *SAS Institute*, "any" meant "every" in that statute largely because it was used to modify a "singular noun in [an] affirmative context[]." 138 S. Ct. at 1354 (quoting

Oxford English Dictionary (3d ed., Mar. 2016), www.oed.com/view/Entry/8973). Consider, for example, a statute that read, "Any state that misses an attainment deadline will be bumped up." In that affirmative context, "any" clearly means "every." Here, however, we have a conditional context—as EPA may grant an extension *upon* the application of any state. When modifying a "singular count noun" (like "State") in this context, the word "any" generally refers to "an unspecified member of a particular class." Oxford English Dictionary, *supra*. Therefore, consider another statute that read, "If any state in a multistate region violates its SIP, the entire region will be bumped up." There, "any" would not naturally mean "every." It would instead refer to an "unspecified member" of the multistate region, which could be but a single state. Because § 7511(a)(5) similarly uses "any" in a conditional context, it unambiguously indicates that not every state need apply for an attainment-date extension in order for EPA to grant one.

Nevertheless, Delaware argues that reading the term "any State" alongside the rest of § 7511(a)(5) yields a different unambiguous meaning. Section 7511(a)(5) specifies that after "any State" has requested an extension, that extension can be granted only if "*the State* has complied with all requirements and commitments pertaining to the area in the applicable [SIP]." 42 U.S.C. § 7511(a)(5)(A) (emphasis added). Delaware interprets "the State" in § 7511(a)(5)(A) to refer back to "any State" that applied for an extension under § 7511(a)(5). Therefore, "[e]ither all states have to apply and all states have to be in compliance with their SIPs, or only one state has to apply and only that state has to be in compliance with its SIP." Del. Br. 21. Of those two options, Delaware advocates for the former. For its part, EPA rejects both options and maintains that while not every state in a nonattainment area must apply for an extension under § 7511(a)(5), every state in that area

must comply with its SIP for the area to qualify for the extension. *See* 81 Fed. Reg. at 26,702.

Again, because context matters, Delaware's argument has some force. In fact, if Delaware were correct that every state in a multistate nonattainment area had to be SIP-compliant for EPA to grant the area an extension, we might agree that § 7511(a)(5) also required every state in that area to apply for the extension in the first place. In that case, the surrounding text would suggest Congress departed from the otherwise plain meaning of "any" when enacting § 7511(a)(5).

But § 7511(a)(5)(A) does *not* require every state to comply with its SIP. It is "well established" that "the" "particularizes the subject which it precedes" and acts as a "word of limitation." *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5 (D.C. Cir. 2000) (quoting *Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969) (en banc)). In other words, "the" narrows the class of states that must comply with their SIPs to those specific states that already submitted applications for extension requests. The scope of SIP-complying states is restricted to the scope of extension-applying states. And as we discussed, the natural meaning of "any State" in § 7511(a)(5) does not, read alone, require every state in a multistate area to apply for an extension. Section 7511(a)(5)(A)'s use of "the State" cannot possibly refer to a broader class of states that must comply with their SIPs than the class of applying states. If every state had to comply with its SIP, "the" would serve no limiting role. Therefore, the only states that are required to comply with their SIPs are those that applied for an extension.

Additionally, we strive to construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88,

101 (2004)). If there is "only one statutory reading that gives full effect" to the entirety of § 7511(a)(5), we will adopt it so long as other tools of statutory interpretation do not overcome that interpretation. *Friends of Blackwater v. Salazar*, 691 F.3d 428, 447 (D.C. Cir. 2012). Our interpretation of § 7511(a)(5) gives full effect to both the determiner "any" and the definite article "the": Fewer than all states in a nonattainment area can apply for an extension, and only those applying states must demonstrate compliance with their own implementation plans. This reading captures both the expansiveness of "any State" and the particularity of "the State," a harmonization neither Delaware nor EPA achieve with their readings of § 7511(a)(5). Delaware's interpretation misreads both "any State" and "the State," and EPA's interpretation correctly reads "any State" while missing the mark on "the State." Our interpretation gets both right.

Neither Delaware nor EPA has demonstrated why this literal interpretation should not control. To "avoid a literal interpretation at *Chevron* step one," a party "must show either that, as a matter of historical fact, Congress did not mean what it appears to have said, or that, as a matter of logic and statutory structure, it almost surely could not have meant it." *Engine Mfrs. Ass'n v. EPA*, 88 F.3d 1075, 1089 (D.C. Cir. 1996). Delaware suggests that it is "improbable" Congress intended for EPA to grant extensions in a multistate area without requiring each state to comply with its individual SIP. Del. Br. 21. But improbability alone cannot "overcome th[e] plain meaning presumption" applicable at *Chevron*'s first step. *Va. Dep't of Med. Assistance Servs. v. HHS*, 678 F.3d 918, 923 (D.C. Cir. 2012).

Therefore, we resolve this statutory question at *Chevron* Step One. Read in light of its surrounding language, "any State" unambiguously permits EPA to consider an application

filed by fewer than all states in a multistate nonattainment area. The plain meaning of "the State" refers to the state (or states) that applied for the extension, and assumes that a single state can validly apply for an extension. This use of "the State" confirms that only the applying state or states must comply with the relevant SIPs for EPA to consider granting an extension to a multistate area. And if only one state can file an extension request under § 7511(a)(5), then Delaware did not need to file a request for EPA to consider granting an extension to the Philadelphia Area.

Three states—Maryland, New Jersey, and Pennsylvania— filed applications to extend the Philadelphia Area's attainment date. EPA thus had statutory authority under § 7511(a)(5) to grant the states' requests, even though Delaware was not among them.

IV

Delaware raises two arbitrary-and-capricious challenges to EPA's decision extending the Philadelphia Area's attainment date. First, because New Jersey never claimed nor demonstrated compliance with its SIP, EPA could not reasonably conclude that the state had satisfied § 7511(a)(5)(A).* Second, EPA could not reasonably rely on

---

* Delaware also argues that EPA acted arbitrarily and capriciously when concluding that Delaware complied with its own SIP. Given our interpretation of § 7511(a)(5)(A), EPA was not required to determine Delaware's compliance with its SIP. *See supra* Part III.B. Even so, we will assume that EPA nevertheless retained discretion to consider Delaware's compliance, given that the Act only dictates that EPA "may" grant an extension when the statute's requirements are met. 42 U.S.C. § 7511(a)(5). To the extent that EPA exercised discretion when considering Delaware's compliance, that action is still subject to arbitrary-and-capricious review. *See, e.g.*,

Maryland's and Pennsylvania's certifications of compliance with their SIPs without also collecting and considering evidence of their actual compliance.

A

The Act's judicial-review provision does not address the standard for reviewing decisions regarding attainment-date extensions. *See* 42 U.S.C. § 7607(d)(1). Therefore, the Administrative Procedure Act's (APA's) standards govern Delaware's challenge. *See Carus Chem. Co. v. EPA*, 395 F.3d 434, 441 (D.C. Cir. 2005) (explaining that when the relevant statute does not specify an applicable standard of review, we "proceed under the standard prescribed by the [APA]"). The APA requires us to hold unlawful and set aside EPA's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Our review is "highly deferential" and "presumes agency action to be valid." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997 (D.C. Cir. 2008) (quoting *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C. Cir. 1976) (en banc)). We will uphold EPA's action "if the record shows EPA considered all relevant factors and articulated a 'rational connection between the facts found and the choice made.'" *Catawba County v. EPA*, 571 F.3d 20, 41 (D.C. Cir. 2009) (per curiam) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

---

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) (stating that an "agency must cogently explain why it has exercised *its discretion* in a given manner" to satisfy the Administrative Procedure Act's arbitrary-and-capricious standard (emphasis added)). We ultimately conclude that EPA's assessment of Delaware's compliance was not arbitrary or capricious for the same reasons supporting why its assessment of New Jersey's compliance was not arbitrary or capricious. *See infra* Part IV.B.

We give an "extreme degree of deference" to EPA when it is "evaluating scientific data within its technical expertise," *City of Waukesha v. EPA*, 320 F.3d 228, 247 (D.C. Cir. 2003) (internal quotation marks and citation omitted), and deference "is especially appropriate when EPA 'acts under unwieldy and science-driven statutory schemes like the Clean Air Act,'" *Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1018 (D.C. Cir. 2016) (quoting *Bluewater Network v. EPA*, 372 F.3d 404, 410 (D.C. Cir. 2004)).

B

Because New Jersey did not submit a certification of its SIP compliance, EPA applied "its own knowledge and expertise with regard to whether the state is meeting [its SIP] obligations, including a review of whether [EPA] or outside parties has identified state noncompliance with the obligations." 81 Fed. Reg. at 26,702. EPA reviewed the ozone SIP for New Jersey and determined that there were no pending enforcement actions alleging that the state had failed to implement its EPA-approved SIP. *See id.* at 26,702-03. This approach for determining compliance evinces a "rational connection between the facts found and the choice made," *Burlington Truck Lines*, 371 U.S. at 168, because it is rational for EPA to conclude that an absence of enforcement actions against a state is a reasonable proxy for SIP compliance. This is especially so given that no commenter during the rulemaking had "presented any evidence or made any demonstration" suggesting that New Jersey was out of compliance with its SIP. 81 Fed. Reg. at 26,703. And Delaware offers no serious argument now to impeach EPA's approach.

Instead, Delaware argues that the attainment-date extension was arbitrary and capricious because EPA had

recognized in another proposed rule that New Jersey's SIP was itself "substantially inadequate." State Implementation Plans: Response to Petition for Rulemaking, 80 Fed. Reg. 33,840, 33,846 (June 12, 2015). In June 2015, EPA promulgated a final rule requiring thirty-six states, including New Jersey, to cure certain inadequacies in their respective SIPs. *Id.* at 33,847. Delaware believes that once EPA identified "substantial deficiencies" in New Jersey's SIP, EPA could not reasonably grant an extension for the Philadelphia Area under § 7511(a)(5)(A).

But the text of § 7511(a)(5)(A) requires only that an applying state in a nonattainment area comply with the requirements in its "applicable [SIP]." As our sister circuit concluded when faced with a nearly identical provision of the Act, "The statute requires the state to have 'complied with all requirements and commitments pertaining to that area in *the implementation plan*,' not the [Act]." *Vigil v. Leavitt*, 381 F.3d 826, 846 (9th Cir. 2004) (emphasis in *Vigil*) (quoting 42 U.S.C. § 7513(e)). Since at least 1994, EPA has similarly interpreted § 7511(a)(5)(A) to require compliance with "the EPA-approved SIP." As such, we conclude that EPA did not act arbitrarily or capriciously when requiring New Jersey to comply only with its EPA-approved SIP.

C

Delaware also argues that Maryland and Pennsylvania could not submit certifications of compliance with their SIPs "without evidence to substantiate [the certifications]." Del. Br. 29. EPA maintains that under § 7511(a)(5)(A) the agency may rely on the "certified statements of its state counterparts," 81 Fed. Reg. at 26,704, unless "evidence is properly before the agency during the rulemaking process that warrants a different finding," EPA Br. 29; *see also* 81 Fed. Reg. at 26,704. Absent

any contrary evidence in the record, EPA accepted Maryland's and Pennsylvania's certifications. *See* 81 Fed. Reg. at 26,704.

Because § 7511(a)(5)(A) is "silent" as to how a state may demonstrate compliance with its SIP, *Chevron*, 467 U.S. at 843, EPA's decision regarding state certification is permissible if reasonable in this context, *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 724 F.3d 206, 215 (D.C. Cir. 2013). EPA's presumptive reliance on state certification is reasonable because it is an efficient allocation of the agency's limited resources and personnel, *see Massachusetts v. EPA*, 549 U.S. 497, 527 (2007), and because EPA retains discretion to look beyond the certification if other evidence gives it reason to doubt the certification's credibility.

Moreover, the Act is "an exercise in cooperative federalism." *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 240 (D.C. Cir. 2013). While the Act authorizes EPA to establish NAAQS, it delegates to states the responsibility for implementing those standards. *Michigan v. EPA*, 268 F.3d 1075, 1078 (D.C. Cir. 2001). Delaware's attempt to prevent EPA from presumptively relying on states' certifications of compliance with their own SIPs would undermine the agency's efforts to cooperate with the states. If anything, the federalist design of the Act supports the reasonableness of EPA's practice. *See* 81 Fed. Reg. at 26,704 (explaining that EPA's reliance on the states' certifications is reasonable in light of "the state and federal partnership in implementing the [Act]").

Finally, Delaware argues that Maryland and Pennsylvania were not in compliance with their SIPs because those SIPs lacked certain provisions required by 42 U.S.C. § 7511c(b)(1)(B). This argument was forfeited because no commenter raised it before the agency during rulemaking. *See Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir.

2002). In any event, Delaware's argument also relies on an affidavit from Ronald Amirikian, an employee of the Delaware Department of Natural Resources & Environmental Control's Air Quality Division, produced months after EPA promulgated its final rule extending the Philadelphia Area's attainment date. However, it is "black-letter administrative law" that a reviewing court cannot consider information that was unavailable to the agency when it made its decision. *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). Because EPA could not have considered the Amirikian affidavit during the rulemaking process, we will not consider it now. And even if Maryland's and Pennsylvania's SIPs lacked the provisions required by § 7511c(b)(1)(B), that fact would only demonstrate that the states' SIPs were inadequate, which does not matter for purposes of § 7511(a)(5)(A). *See supra* Part IV.B.

V

For the foregoing reasons, the petition for review is

*Denied*.