# Supreme Court of Texas

## No. 21-0028

TotalEnergies E&P USA, Inc.,

*Petitioner*,

v.

MP Gulf of Mexico, LLC,

*Respondent*

### On Petition for Review from the Court of Appeals for the Twelfth District of Texas

**Argued September 20, 2022**

JUSTICE BOYD delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Devine, Justice Blacklock, and Justice Bland joined.

JUSTICE BLAND filed a concurring opinion.

JUSTICE BUSBY filed a dissenting opinion.

Justice Huddle and Justice Young did not participate in the decision.

The parties in this case dispute whether their contracts require them to resolve their controversies through arbitration, but they also

clash over whether they agreed that an arbitrator, rather than the courts, must resolve that dispute. We hold that (1) the parties clearly and unmistakably delegated arbitrability issues to the arbitrator by agreeing to arbitrate their controversies in accordance with the AAA Commercial Rules; (2) the fact that the parties may have agreed to arbitrate only some controversies while carving out others does not affect the clear and unmistakable delegation of the arbitrability decision to the arbitrator; and (3) in accordance with these parties' agreements, the courts must defer to the arbitrator to decide whether this controversy falls within the arbitration agreement's scope. Based on these holdings, we affirm the court of appeals' judgment.

## I.
## Background

MP Gulf of Mexico owns a two-thirds interest in a group of oil-and-gas leases in the Gulf of Mexico known as the Chinook Unit, and TotalEnergies E&P USA owns the remaining one-third.[1] A written contract referred to as the Chinook Operating Agreement governs the parties' relationship as the Unit's co-owners. MP Gulf also owns all of the interest in a nearby group of leases known as the Cascade Unit. To reduce costs and promote efficiency, MP Gulf and Total E&P agreed to construct a Common System to jointly process, store, and transport

---

[1] Although both parties' predecessors-in-interest were involved in some of these transactions, we refer solely to MP Gulf and Total E&P for simplicity's sake. And although ownership interests have changed since the events giving rise to this dispute, we describe the facts as they existed when the relevant events occurred.

production from all the leases in both Units. MP Gulf serves as the operator of both Units and of the Common System.

To establish the Common System, the parties entered into two separate written contracts. The first, called the System Operating Agreement, "govern[s] the operation of the Common System," but it does so "subject to the requirements of" the second, called the Cost Sharing Agreement. The System Operating Agreement requires MP Gulf, as the system operator, to advance all costs of operating the Common System and then collect those costs from the interest owners "as provided in the Cost Sharing Agreement." If the Cost Sharing Agreement does not allocate particular costs, the System Operating Agreement requires each party to "pay those Costs in proportion to its Equity Interest" in the Common System. As the owner of a one-third interest in one of the two Units that equally owned the Common System, Total E&P's Equity Interest in the Common System was 16.665 percent.

Ten years after the parties created the Common System, MP Gulf proposed to re-enter the Chinook No. 6 well, which had previously been shut in. Exercising their respective rights under the Chinook Operating Agreement, Total E&P elected not to participate in that project, and MP Gulf elected to re-enter the well without Total E&P's participation. Later, MP Gulf demanded that Total E&P pay about $41 million, representing 16.665 percent of the Common System costs related to the Chinook No. 6 well.

Total E&P refused to pay the $41 million, contending that the Cost Sharing Agreement specifically allocates the disputed costs and thus does not require the owners to cover the costs based on their equity

3

interests. Specifically, Total E&P asserted that the costs qualify as either "Fixed Operating Expenses" or "Variable Operating Expenses," both of which the Cost Sharing Agreement expressly allocates "to each Unit" equally, so the Chinook Unit and the Cascade Unit each owe fifty percent of the costs. As to the Chinook Unit's share, Total E&P argued the Chinook Operating Agreement relieves it of any obligation to pay any portion of the expenses because it elected not to participate in the project. Instead, according to Total E&P, the Chinook Operating Agreement required MP Gulf to cover all of the Chinook Unit's share of the Common System costs and recover those expenses from the returns Total E&P would have received had it elected to participate in the re-entry of the well.

MP Gulf disagreed and demanded that Total E&P participate in negotiations and mediation as required under the System Operating Agreement. Total E&P objected, arguing that the System Operating Agreement's dispute-resolution provisions did not apply to this controversy because the Chinook Operating Agreement governs its obligations to pay costs allocated to the Chinook Unit. It nevertheless agreed to participate in the negotiations and mediation while reserving that objection.

After the negotiations and mediation were unsuccessful, Total E&P filed this suit in a Harris County district court, seeking a declaration construing the Cost Sharing Agreement. Specifically, Total E&P sought the court's confirmation that, because the Cost Sharing Agreement allocates the disputed costs to "each Unit," the Chinook Operating Agreement governs any liability Total E&P may have as a

4

co-owner of the Chinook Unit. To support its right to file this suit, Total E&P noted that the Cost Sharing Agreement does not contain an arbitration clause and instead grants exclusive jurisdiction over all legal disputes to the courts in Harris County, Texas.

Although Total E&P asked the court to declare that the Cost Sharing Agreement required MP Gulf to look to the Chinook Operating Agreement (as opposed to the System Operating Agreement) to resolve the parties' controversy over the $41 million demand, it did not ask the court to actually determine the parties' rights under the Chinook Operating Agreement. This is because the Chinook Operating Agreement includes an arbitration clause requiring that "any dispute or controversy [that] arises between the Parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof" must "be submitted to arbitration" before the International Institute for Conflict Prevention and Resolution. So on the same day it filed this suit, Total E&P initiated an arbitration proceeding with the International Institute, asking it to determine the parties' rights under the Chinook Operating Agreement.

Less than two weeks later, MP Gulf initiated an arbitration proceeding before the American Arbitration Association, asserting that Total E&P breached the System Operating Agreement by refusing to pay the $41 million and seeking a declaration as to how the Cost Sharing Agreement allocates those Common System expenses. MP Gulf initiated the AAA arbitration because article 16.16.1 of the System Operating Agreement provides that, "[i]f any dispute or controversy arises between the Parties out of this Agreement, the alleged breach thereof, or any tort

5

in connection therewith, or out of the refusal to perform the whole or any part thereof," and if the parties are unable to resolve that dispute or controversy through negotiations or mediation, the dispute or controversy "shall be submitted to arbitration . . . in accordance with the rules of the AAA and the provisions in this Article 16.16." And article 16.16.2 provides that the "procedure of the arbitration proceedings shall be in accordance with the Commercial Rules of the AAA, as may be modified by the panel of arbitrators."

In summary, the parties' controversy over whether Total E&P owes MP Gulf $41 million resulted in three separate proceedings before three separate tribunals, based on three different dispute-resolution clauses in the parties' three written agreements:

1. This suit by Total E&P, seeking a declaration that the Cost Sharing Agreement—which requires controversies to be resolved in the Harris County District Courts—requires the parties to look to the Chinook Operating Agreement to resolve the controversy over costs;

2. Total E&P's arbitration proceeding to determine the parties' obligations under the Chinook Operating Agreement, which requires controversies to be resolved by arbitration before the International Institute; and

3. MP Gulf's arbitration proceeding asserting breach of the System Operating Agreement, which requires controversies to be resolved before the AAA.

MP Gulf argues that the System Operating Agreement's arbitration clause applies to the parties' controversy because MP Gulf's authority to bill the costs and Total E&P's obligation to pay them arise from the System Operating Agreement, which is "integrated into" the

6

Cost Sharing Agreement. According to MP Gulf, the two Agreements "operate together as a single, unified instrument" to govern how the Common System costs must be allocated among the parties. MP Gulf specifically alleged that Total E&P's "decision not to participate in the re-entry phase of the Chinook No. 6 well had no bearing on its ownership of the Common System or its obligation to pay its Equity Interest share of Common System costs." And because the dispute "arises . . . out of" the System Operating Agreement and Total E&P's failure to perform under that Agreement, MP Gulf asserted that article 16.16 of the System Operating Agreement required the parties to resolve their controversy through AAA arbitration and in accordance with the AAA rules and procedures.

Total E&P, however, filed a motion asking the trial court to stay the AAA arbitration, asserting that the parties' controversy over the cost allocation does not arise out of the System Operating Agreement but instead arises out of the Cost Sharing Agreement, which vests "exclusive jurisdiction" in the Harris County courts and contains no arbitration clause. Total E&P argued that the court should stay the AAA arbitration because the AAA arbitrator cannot resolve MP Gulf's claim for breach of the System Operating Agreement until the court first determines the proper cost allocation under the Cost Sharing Agreement. MP Gulf opposed the stay and filed a motion to compel the AAA arbitration, arguing that the court must read the System Operating Agreement and the Cost Sharing Agreement together, making the mandatory AAA arbitration clause applicable regardless of which agreement the dispute arises out of.

But MP Gulf did not contend only that the parties' agreements require them to arbitrate their controversy before the AAA. It also argued that the System Operating Agreement requires the AAA arbitrator, and not the court, to decide whether the parties agreed to submit their controversy to arbitration before the AAA. For this argument, MP Gulf relied on rule 7(a) of the AAA Commercial Rules, which provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[2] MP Gulf argued that, by agreeing in the System Operating Agreement to submit all disputes arising out of that Agreement to AAA arbitration "in accordance with" the AAA Commercial Rules, the parties expressly delegated to the arbitrator the power to decide whether the controversy must be resolved through arbitration. Total E&P disagreed, arguing that an agreement to arbitrate in accordance with the AAA rules does not create an enforceable agreement to delegate arbitrability questions to the arbitrator, and even if it could, it would not do so when the parties agree only to arbitrate claims that "arise out of" their agreement.

The trial court agreed with Total E&P and entered orders granting its motion to stay the AAA arbitration and denying MP Gulf's motion to compel that arbitration. The court of appeals reversed and rendered judgment compelling AAA arbitration, agreeing with MP Gulf

---

[2] AM. ARB. ASS'N, *Commercial Arbitration Rules and Mediation Procedures* 13 (2013), https://adr.org/sites/default/files/CommercialRules_Web-Final.pdf.

that, by agreeing to arbitrate before the AAA and in accordance with its rules, the parties delegated the arbitrability issue to the AAA arbitrator. 647 S.W.3d 96, 102 (Tex. App.—Tyler 2020). We granted Total E&P's petition for review.

## II.
## Arbitrability and the AAA Rules

A dispute over whether parties agreed to resolve their controversies through arbitration—referred to as a dispute over the controversies' "arbitrability"—typically encompasses three distinct disagreements: (1) the merits of the underlying controversy (here, whether Total E&P must pay MP Gulf $41 million); (2) whether the merits must be resolved through arbitration instead of in the courts; and (3) who (a court or the arbitrator) decides the second question. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 120 (Tex. 2018). The second question must be answered before the first, but the third must be answered before the second. So we begin with the third question, and we conclude the parties here agreed to delegate the arbitrability issue to the arbitrator.

## A.    Arbitration law

Basic contract law governs our resolution of the third question.[3] Because arbitration is a matter of contract—"a matter of consent, not coercion"—parties cannot be compelled to arbitrate any controversy

---

[3] The Federal Arbitration Act, 9 U.S.C. §§ 1–16, and the Texas Arbitration Act, TEX. CIV. PRAC. & REM. CODE §§ 171.001–.098, both honor parties' freedom to contractually agree to arbitrate disputes and require courts to enforce those agreements in accordance with the law of contracts. The parties here do not dispute or address which act applies in this case.

unless they have contractually agreed to do so. *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 521 (Tex. 2019).

A contractual agreement to arbitrate controversies is severable from a broader contract that contains it, and courts must consider the two separately. *Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 586 (Tex. 2022); *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010). When a party challenges the validity of the broader contract but not of an arbitration agreement contained within that contract, courts must enforce the arbitration agreement and require the arbitrator to decide the challenge to the broader contract. *Rent-A-Ctr.*, 561 U.S. at 72.[4] But when a party challenges the validity or scope of an arbitration agreement contained within a broader contract, courts must resolve that challenge to determine whether the parties agreed to arbitrate their controversies regarding the contract. *Id.*[5]

But courts have recognized an important exception to this severability rule. Because arbitration is a matter of contract, parties can agree that arbitrators, rather than courts, must resolve disputes over

---

[4] *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20–21 (2012); *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

[5] *See RSL Funding*, 569 S.W.3d at 120; *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *Nitro-Lift*, 568 U.S. at 20–21; *Rent-A-Ctr.*, 561 U.S. at 71; *Buckeye Check Cashing*, 546 U.S. at 445–46. Exceptions to this default rule may apply when the challenge to the arbitration agreement concerns "dispositive gateway questions," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002), or "particular procedural preconditions for the use of arbitration," *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 35 (2014).

10

the validity and scope of their arbitration agreement. *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018).[6] If the parties have contractually agreed to delegate arbitrability disputes to the arbitrator, courts must enforce that agreement just as they must enforce an agreement to delegate resolution of the underlying merits to the arbitrator. *RSL Funding*, 569 S.W.3d at 120.[7] "If, on the other hand, the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question the parties did not submit to arbitration, namely, independently." *First Options*, 514 U.S. at 943.

For the most part, the determination of whether parties have agreed to delegate arbitrability to an arbitrator is governed by "ordinary state-law principles that govern the formation of contracts." *Id.* at 944. But because parties often "might not focus [on] the significance of having arbitrators decide the scope of their own powers," and to avoid the risk of requiring parties to arbitrate a dispute they have not agreed to arbitrate, courts will only enforce an agreement to delegate arbitrability to the arbitrator if that agreement is "clear and unmistakable." *Robinson*, 590 S.W.3d at 525, 532.[8]

---

[6] *See Henry Schein*, 139 S. Ct. at 529; *Rent-A-Ctr.*, 561 U.S. at 70.

[7] *See Henry Schein*, 139 S. Ct. at 529; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

[8] *See Jody James Farms*, 547 S.W.3d at 631; *see also Henry Schein*, 139 S. Ct. at 530; *Howsam*, 537 U.S. at 83; *First Options*, 514 U.S. at 944; *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).

**B.** **Precedent on incorporation of arbitration rules**

The System Operating Agreement on which MP Gulf relies to compel arbitration—not only of the parties' claims but also of the parties' dispute over whether those claims must be arbitrated—does not expressly delegate arbitrability to the arbitrator. But MP Gulf contends the parties clearly and unmistakably agreed to that result by agreeing to arbitrate their controversies "in accordance with the rules of the AAA" and using "procedure[s] . . . in accordance with the Commercial Rules of the AAA." This is because, as we have noted, AAA Commercial Rule 7(a) provides that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[9] In deciding whether the parties clearly and unmistakably delegated arbitrability issues to the arbitrator by agreeing to arbitrate in accordance with this rule, we first consider previous decisions addressing that issue.

---

[9] As discussed below, the AAA recently amended rule 7(a) to add language providing that the arbitrator shall have the power to rule on his or her own jurisdiction and on any objection to the arbitrability of any claim or counterclaim "without any need to refer such matters first to a court." *See* AM. ARB. ASS'N, *Commercial Arbitration Rules and Mediation Procedures* 14 (2022), https://adr.org/sites/default/files/Commercial_Rules-Web.pdf. Rule 1(a) provides, however: "These Rules and any amendment to them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA." *Id.* at 10. Because MP Gulf properly demanded arbitration before September 1, 2022, we apply the version in effect before the recent amendment.

### 1. This Court

We have not previously decided whether an agreement to arbitrate in accordance with the AAA rules establishes a clear and unmistakable agreement to delegate arbitrability issues to the arbitrator. We observed in *Jody James Farms* that such a result "*may be* the consequence of incorporating the AAA rules in disputes between *signatories* to an arbitration agreement," but we did not decide the issue because that case involved a signatory's dispute with a non-signatory. 547 S.W.3d at 631–32 (emphases added).[10] Similarly, we noted in *Robinson* that the "effect of incorporating the AAA rules is subject to some jurisprudential disagreement," but we did not address the issue because the agreement in that case did not incorporate or refer to the AAA rules. 590 S.W.3d at 523 & n.8. And most recently, in *San Antonio River Authority v. Austin Bridge & Road, L.P.*, we noted a court of appeals' holding that an agreement's "mere reference to the AAA's rules does not provide clear and unmistakable evidence of the parties' delegation of issues of arbitrability to an arbitrator," but we again did not address the issue because that case involved the separate question

---

[10] We held in *Jody James Farms* that an arbitration agreement's incorporation of the AAA rules did not clearly and unmistakably demonstrate an agreement to delegate arbitrability of claims *against a non-signatory* to the arbitrator because parties "cannot be forced to arbitrate absent a binding agreement to do so." 547 S.W.3d at 632. Courts in other jurisdictions have since reached the opposite result in cases involving non-signatories. *See, e.g.*, *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 (6th Cir. 2020), *cert. denied sub nom. Piersing v. Domino's Pizza Franchising LLC*, 141 S. Ct. 1268 (2021); *Wiggins v. Warren Averett, LLC*, 307 So. 3d 519, 523 (Ala. 2020). Because MP Gulf and Total E&P are both signatories to the agreements at issue, neither party asks us to reconsider that holding here.

13

of whether parties could agree to delegate governmental-immunity issues to an arbitrator. 601 S.W.3d 616, 626–28 (Tex. 2020) (quoting *Burlington Res. Oil & Gas Co. v. San Juan Basin Royalty Tr.*, 249 S.W.3d 34, 41–42 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)).

### 2. The United States Supreme Court

Nor has the United States Supreme Court decided the issue. *Henry Schein* involved a dispute between signatories to an agreement that required arbitration in accordance with the AAA rules, except for certain claims including those seeking injunctive relief. 139 S. Ct. at 528. The plaintiff sued for both injunctive relief and damages, but the defendant moved to compel arbitration and argued that—because the parties incorporated the AAA rules—the arbitrator must decide whether the claims were arbitrable. *Id.* The Fifth Circuit disagreed, holding that, even if the parties delegated arbitrability issues to the arbitrator by incorporating the AAA rules, the court could nevertheless resolve the arbitrability issue because the defendant's argument that the claims were arbitrable was "wholly groundless." *Id.* The Supreme Court reversed, holding that courts must enforce an agreement to delegate arbitrability issues to the arbitrator even if the court believes the argument in favor of arbitrability is "wholly groundless." *Id.* at 529. But the Court remanded the case without deciding whether the parties in fact delegated the arbitrability question to the arbitrator by incorporating the AAA rules. *Id.* at 531.

On remand, the Fifth Circuit held that an agreement to arbitrate only some claims under the AAA rules, while "carv[ing] out" other claims, does not clearly and unmistakably delegate arbitrability issues

14

to the arbitrator. *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281–82 (5th Cir. 2019). The Supreme Court then granted the defendant's petition for writ of certiorari, agreeing to decide "[w]hether a provision in an arbitration agreement that exempts certain claims from arbitration negates an otherwise clear and unmistakable delegation of questions of arbitrability to an arbitrator." Petition for Writ of Certiorari at (I), *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 141 S. Ct. 107 (2020) (No. 19-963); *see Henry Schein*, 141 S. Ct. at 107 (granting certiorari). But the Court denied the plaintiff's cross-petition, declining to decide "[w]hether an arbitration agreement that identifies a set of arbitration rules to apply if there is arbitration clearly and unmistakably delegates to the arbitrator disputes about whether the parties agreed to arbitrate in the first place." Conditional Cross-Petition for Writ of Certiorari at (I), *Archer & White Sales, Inc v. Henry Schein, Inc.*, 141 S. Ct. 113 (2020) (No. 19-1080); *see Archer & White Sales*, 141 S. Ct. at 113. After hearing oral argument, however, the Court dismissed the defendant's petition as improvidently granted and thus did not decide either question. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 141 S. Ct. 656 (2021).

### 3. Other jurisdictions

Many courts in numerous other jurisdictions have addressed the question of whether an agreement to arbitrate in accordance with the AAA rules, or with similar arbitration rules that empower the arbitrator to decide arbitrability issues, clearly and unmistakably delegates arbitrability to the arbitrator. Beginning nearly forty years ago, every federal circuit—except perhaps the Seventh Circuit—has held that it

15

does.[11] And ten of the fifteen state supreme courts that have addressed the issue have agreed,[12] while the remaining five have held that

[11] The First Circuit held in 1981 that a contract delegated arbitrability issues to the arbitrator by requiring arbitration in accordance with the International Chamber of Commerce arbitration rules, which provided that "any decision as to the arbitrator's jurisdiction shall be taken by the arbitrator himself." *Societe Generale de Surveillance, S.A. v. Raytheon Eur. Mgmt. & Sys. Co.*, 643 F.2d 863, 869 (1st Cir. 1981). That court reaffirmed that decision under the "clear and unmistakable" standard in 1989. *See Apollo Comput., Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989). For more recent examples from each of the circuits, see *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1031 (9th Cir. 2022) (holding incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1298 (11th Cir. 2022) ("By incorporating this AAA rule about the arbitrator's 'power to rule on his or her own jurisdiction' into their agreement, [the parties] clearly and unmistakably agreed to arbitrate threshold arbitrability disputes."); *Commc'ns Workers of Am. v. AT&T Inc.*, 6 F.4th 1344, 1347 (D.C. Cir. 2021) (holding a bilateral contract incorporating the AAA rules clearly and unmistakably delegated arbitrability to the arbitrator); *ROHM Semiconductor USA, LLC v. MaxPower Semiconductor, Inc.*, 17 F.4th 1377, 1383–84 (Fed. Cir. 2021) (holding a bilateral contract between sophisticated parties incorporating the CCCP rules clearly and unmistakably delegated arbitrability to the arbitrator); *Goldgroup Res., Inc. v. DynaResource de Mex., S.A. de C.V.*, 994 F.3d 1181, 1191 (10th Cir. 2021) (holding incorporation of the AAA rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability issues, including the issue of waiver"); *Bosse v. N.Y. Life Ins. Co.*, 992 F.3d 20, 29 (1st Cir. 2021) ("This Court is clear that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator."); *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 584 (6th Cir. 2021) ("The text of the Agreement, including the AAA rules, shows that the parties intended to send gateway questions of arbitrability exclusively to an arbitrator."); *Mendoza v. Fred Haas Motors, Ltd.*, 825 F. App'x 200, 202–03 (5th Cir. 2020) (holding incorporation of the AAA rules clearly and unmistakably delegates arbitrability issues to the arbitrator); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103–04 (3d Cir. 2020) (holding incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability), *cert. denied*, 141 S. Ct. 1685 (2021); *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017) (holding "that, in

the context of a commercial contract between sophisticated parties, the explicit incorporation of JAMS Rules serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability" and citing numerous cases including those relying on the AAA rules); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) ("We have previously held the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability."); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 5 (2d Cir. 2013) (holding incorporation of the JAMS rules "clearly and unmistakably delegated questions of arbitrability to the arbitrator").

The Seventh Circuit initially held that an arbitration agreement's incorporation of the NASD Code, which provided that the "arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code," was not "a clear and unmistakable expression of the parties' intent to have the arbitrators, and not the court, determine which disputes the parties have agreed to submit to arbitration." *Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 514 n.6 (7th Cir. 1992). After declining to revisit that holding in *Smith Barney Inc. v. Schell*, 53 F.3d 807, 809 (7th Cir. 1995), and in *Miller v. Flume*, 139 F.3d 1130, 1134 (7th Cir. 1998), the court reached a similar conclusion regarding an agreement's incorporation of the AAA rules in *Reliance Insurance Co. v. Raybestos Products Co.*, 382 F.3d 676, 678–79 (7th Cir. 2004). Some district courts within the Circuit, however, have since held that incorporation of the AAA rules does clearly and unmistakably delegate arbitrability to the arbitrator, *see, e.g.*, *Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at *3–4 (N.D. Ill. Nov. 27, 2017) ("Rule 7(a) of the AAA Rules could not be clearer about the power of the arbitrator to decide gateway arbitrability issues."); *Bayer CropScience, Inc. v. Limagrain Genetics Corp.*, No. 04 C 5829, 2004 WL 2931284, at *4 (N.D. Ill. Dec. 9, 2004) (holding incorporation of the AAA rules clearly and unmistakably delegated arbitrability to the arbitrator), while others have held it does not, *see, e.g.*, *Taylor v. Samsung Elecs. Am., Inc.*, No. 19 C 4526, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020) ("[T]he Seventh Circuit has not addressed the point, and this Court does not find [the contrary] decisions persuasive.").

[12] *See, e.g.*, *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 910 (Nev. 2022) ("[A]s many courts have found, incorporating the AAA's rules, even without more, constitutes clear and unmistakable evidence of intent to submit the question of arbitrability to the arbitrator."); *Airbnb, Inc. v. Doe*, 336 So. 3d. 698, 701–03 (Fla. 2022) (holding incorporation of the AAA rules clearly and unmistakably evidences parties' intent to empower an arbitrator to resolve questions of

17

incorporation of the AAA rules may or may not delegate arbitrability, depending on other circumstances.[13]

arbitrability); *Wiggins*, 307 So. 3d at 523 ("When an arbitration provision indicates that the AAA rules will apply to the arbitration proceedings, we have held that it is 'clear and unmistakable' that substantive-arbitrability decisions are to be made by the arbitrator . . . ."); *Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 758 (Ky. 2019) (holding incorporation of the AAA rules delegates arbitrability to the arbitrator even when an agreement includes a provision carving out claims for equitable relief); *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 44–45 (Mo. 2017) (holding incorporation of the AAA rules delegates arbitrability to the arbitrator), *abrogated on other grounds by Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 439 (Mo. 2020); *Garthon Bus. Inc. v. Stein*, 86 N.E.3d 514, 514 (N.Y. 2017) (holding incorporation of the London Court of International Arbitration rules clearly and unmistakably delegated arbitrability to the arbitrator); *W. Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 796 S.E.2d 574, 588 (W. Va. 2017) (applying Arizona law and holding "that incorporation of the AAA rules into the arbitration agreements is sufficient evidence that the parties clearly and unmistakably agreed to arbitrate arbitrability"); *26th St. Hosp., LLP v. Real Builders, Inc.*, 879 N.W.2d 437, 446 (N.D. 2016) ("The incorporation of the AAA Rules is clear and unmistakable evidence the parties agreed to arbitrate the question of arbitrability."); *HPD, LLC v. TETRA Techs., Inc.*, 424 S.W.3d 304, 308, 310–11 (Ark. 2012) (holding clause incorporating the AAA rules and requiring arbitration "to the exclusion of any court of law" clearly and unmistakably delegated arbitrability to the arbitrator, despite severability clause and default provision "allowing resort to all remedies at law or in equity"); *Smith Barney, Inc. v. Keeney*, 570 N.W.2d 75, 78 (Iowa 1997) (holding incorporation of the NASD Code "clearly and unambiguously commits the interpretation and application of all of its provisions to the arbitrator").

[13] *See Hoyle, Tanner & Assocs., Inc. v. 150 Realty, LLC*, 215 A.3d 491, 498 (N.H. 2019) (holding incorporation of the AAA rules did not clearly and unmistakably delegate arbitrability to the arbitrator when the arbitration agreement gave both parties an option to file suit or initiate arbitration to resolve disputes); *Nethery v. CapitalSouth Partners Fund II, L.P.*, 257 So. 3d 270, 274–75 (Miss. 2018) (applying Delaware law and holding incorporation of the AAA rules did not delegate arbitrability because the agreement carved out claims for injunctive relief and specific performance); *Glob. Client Sols., LLC v. Ossello*, 367 P.3d 361, 369 (Mont. 2016) (holding an agreement to resolve disputes through arbitration administered by the AAA and "pursuant to its

In particular, courts have most often disagreed over whether the parties' agreement to arbitrate in accordance with the AAA or similar rules clearly and unmistakably delegates arbitrability to the arbitrator when (1) the agreement involves an unsophisticated party,[14] (2) a party

rules and procedures" did not clearly and unmistakably delegate arbitrability to the arbitrator when the dispute involved a consumer and a debt-relief organization, the AAA rules were not part of the record, and neither party specified "which of the multiple sets of commercial or consumer AAA rules are supposedly incorporated here"); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80–81 (Del. 2006) (adopting "[a]s a matter of policy" the "majority federal view that reference to the AAA rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator," but only when the arbitration clause broadly requires arbitration of all disputes between the parties); *Flandreau Pub. Sch. Dist. #50-3 v. G.A. Johnson Constr., Inc.*, 701 N.W.2d 430, 437 n.6 (S.D. 2005) (rejecting "a per se finding of intent to arbitrate arbitrability based solely upon the incorporation of AAA Rule 8 in the agreement").

[14] *Compare, e.g.*, *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 244 (11th Cir. 2021) (holding incorporation of the AAA rules clearly and unmistakably delegated arbitrability to the arbitrator even in a contract involving unsophisticated parties), *W. Va. CVS Pharmacy*, 796 S.E.2d at 590 (same, applying Arizona law); *Richardson*, 811 F. App'x at 103–04 (holding incorporation of the AAA rules constitutes clear and unmistakable evidence that the parties agreed to delegate arbitrability, even for agreements involving unsophisticated parties), *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552–53 (5th Cir. 2018) (same), *Blanton*, 962 F.3d at 851 (same, noting that "nothing in the Federal Arbitration Act purports to distinguish between 'sophisticated' and 'unsophisticated' parties"), *and Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (explaining that its holding that sophisticated parties' incorporation of the AAA rules clearly and unmistakably delegates arbitrability to the arbitrator "does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts"), *with Simply Wireless*, 877 F.3d at 528 (holding that incorporation of the JAMS rules delegates arbitrability to the arbitrator, but only "in the context of a commercial contract between sophisticated parties"), *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018) ("Because the parties here are sophisticated, and because they incorporated AAA rules into their arbitration agreement, they have clearly and unmistakably indicated their

19

relies on the agreement to compel arbitration of class-action claims,[15] and (3) the agreement to arbitrate applies only to some types of claims and controversies and expressly carves out others.[16]

---

intent to submit arbitrability questions to an arbitrator."), *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013) (holding incorporation of the UNCITRAL rules delegates arbitrability to the arbitrator, at least "as long as an arbitration agreement is between sophisticated parties to commercial contracts"), *ROHM Semiconductor*, 17 F.4th at 1383–84 (holding that a contract between sophisticated parties incorporating the CCCP rules clearly and unmistakably delegated arbitrability to the arbitrator), *and Glob. Client Sols.*, 367 P.3d at 369 (holding incorporation of the AAA rules did not clearly and unmistakably delegate arbitrability to the arbitrator when the dispute involved a consumer and a debt-relief organization, the AAA rules were not part of the record, and neither party specified "which of the multiple sets of commercial or consumer AAA rules are supposedly incorporated here").

[15] We recently held that the issue of whether an arbitration agreement requires arbitration of class-wide claims "is more akin to what type of controversy shall be arbitrated—a question for the courts—not a procedural question presumptively for the arbitrator," but the arbitration agreement in that case did not require arbitration in accordance with the AAA or any similar rules. *Robinson*, 590 S.W.3d at 523, 531. Some courts have held that the incorporation of the AAA rules clearly and unmistakably delegates the issue of arbitrability of class claims, *see Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 623–24 (2d Cir. 2019); *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1248 (10th Cir. 2018); *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233–34 (11th Cir. 2018); *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 398 (2d Cir. 2018), while others have held it does not, *see Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 973 (8th Cir. 2017); *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 762–63 (3d Cir. 2016); *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 877 (4th Cir. 2016); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). Because this case does not involve any class claims, we need not address that issue here.

[16] We address this question further below.

### 4. Texas Courts of Appeals

The decisions of the Texas courts of appeals follow this same pattern. Some have held that the parties' incorporation of the AAA or similar rules clearly and unmistakably delegates arbitrability to the arbitrator,[17] others have held it does not, at least for certain disputes,[18] and most have held it does so only when the arbitration agreement

---

[17] *See, e.g.*, *Prestonwood Tradition, LP v. Jennings*, 653 S.W.3d 436, 443 (Tex. App.—Dallas 2022, no pet.) (en banc) (holding incorporation of the AAA rules clearly and unmistakably delegated arbitrability to the arbitrator); *HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *5 (Tex. App.—Dallas June 4, 2020, no pet.) (mem. op.) (holding "a bilateral agreement to arbitrate under the AAA rules constitutes clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator," without discussing the agreement's breadth); *Romero v. Herrera*, No. 04-18-00845-CV, 2019 WL 2439107, at *4 (Tex. App.—San Antonio June 12, 2019, no pet.) ("The AAA rules specifically empower the arbitrator to decide issues of arbitrability and establish Romero and Herrera 'agree[d] to arbitrate arbitrability.'"); *Gilbert v. Rain & Hail Ins.*, No. 02-16-00277-CV, 2017 WL 710702, at *4 (Tex. App.—Fort Worth Feb. 23, 2017, pet. denied) (mem. op.) (holding the arbitrator properly determined arbitrability because the policy incorporated the AAA commercial arbitration rules); *Jody James Farms, JV v. The Altman Grp., Inc.*, 506 S.W.3d 595, 599–600 (Tex. App.—Amarillo 2016) (holding incorporation of the AAA rules constituted clear and unmistakable evidence that the parties to the policy intended the arbitrator to decide arbitrability), *rev'd on other grounds*, 547 S.W.3d at 631–32; *Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding express incorporation of the AAA rules is "clear and unmistakable evidence of the parties' intent to allow the arbitrator to decide such issues").

[18] *See Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App.—Fort Worth 2009, pet. denied) (holding incorporation of the AAA rules, "without more, does not clearly and unmistakably manifest these parties' intent to refer the issue of waiver by litigation conduct to the arbitrator").

applies broadly to all possible claims between the parties without carving out any claims.[19]

---

[19] *See ALLCAPCORP, Ltd. Co. v. Sloan*, No. 05-20-00200-CV, 2020 WL 6054339, at *5 (Tex. App.—Dallas Oct. 14, 2020, no pet.) (mem. op.) (holding incorporation of the AAA rules did not clearly and unmistakably delegate arbitrability to the arbitrator "when the parties agreed the arbitrator had authority to decide only a limited subset of claims and also expressly negated the arbitrator's right to decide *anything* with respect to some claims"); *Lucchese Boot Co. v. Solano*, 473 S.W.3d 404, 412–13 (Tex. App.—El Paso 2015, no pet.) (same, because the agreement "placed substantive restraints on the arbitrator's power by limiting the scope of the arbitration agreement to include only certain enumerated disputes and explicitly precluding submission of other disputes to arbitration"); *BossCorp, Inc. v. Donegal, Inc.*, 370 S.W.3d 68, 76 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Where an arbitration agreement contains carve-outs and exceptions providing judicial remedies for disputes, something more than mere reference to the AAA Rules for the conduct of the arbitration is needed to show that the parties clearly and unmistakably intended to delegate arbitrability to the arbitrator instead of the court."); *Burlington*, 249 S.W.3d at 40–41 (same, when the agreement "restricted the arbitrator's reach only to specifically identified 'audit disputes,' and for specific amounts").

Several other Texas courts have expressed the same limitation by describing the rule as providing that incorporation of AAA or similar rules delegates arbitrability to the arbitrator if the agreement includes a "broad" arbitration clause or requires arbitration of "all claims between the parties." *See Holifield v. Barclay Props., Ltd.*, No. 05-21-00239-CV, 2021 WL 4549498, at *4 (Tex. App.—Dallas Oct. 5, 2021, pet. filed); *Berry Y&V Fabricators, LLC v. Bambace*, 604 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Oxbow Calcining LLC v. Port Arthur Steam Energy, L.P.*, Nos. 09-18-00359-CV, 09-18-00392-CV, 2018 WL 6542555, at *10 (Tex. App.—Beaumont Dec. 13, 2018, no pet.); *Kyani, Inc. v. HD Walz II Enters., Inc.*, No. 05-17-00486-CV, 2018 WL 3545072, at *7 (Tex. App.—Dallas July 24, 2018, no pet.); *Dow Roofing Sys., LLC v. Great Comm'n Baptist Church*, No. 02-16-00395-CV, 2017 WL 3298264, at *3 (Tex. App.—Fort Worth Aug. 3, 2017, pet. denied); *Trafigura Pte. Ltd. v. CNA Metals Ltd.*, 526 S.W.3d 612, 618 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, No. 13-17-00184-CV, 2017 WL 4054395, at *4 (Tex. App.—Corpus Christi–Edinburg Sept. 14, 2017, no pet.) (mem. op.); *Rent-A-Ctr. Tex., L.P. v. Bell*, No. 09-16-00085-CV, 2016 WL 4499093, at *4 (Tex. App.—

## C.     General rule

We agree with the vast majority of courts that, as a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration.

To be sure, an agreement that merely refers to the AAA rules or permits the parties to request assistance from the AAA does not bind the parties to the AAA rules. *See, e.g., Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp.*, 998 F.3d 449, 461–62 (D.C. Cir. 2021) (holding an agreement that provided only that the parties may request the AAA to designate a replacement arbitrator, without mentioning the AAA rules or stating that arbitration must be conducted in accordance with them, did not incorporate the rules by reference). But here, the System Operating Agreement expressly states that arbitration must be conducted "*in accordance with* the rules of the AAA," and that the "procedure of the arbitration proceedings shall be *in accordance with* the Commercial Rules of the AAA." [Emphases added.] By this language, the parties incorporated the AAA rules into their arbitration agreement, and thus the rules are binding, at least absent any conflict between the two. *See*

Beaumont Aug. 25, 2016, no pet.) (mem. op.); *Aspri Invs., LLC v. Afeef*, No. 04-10-00573-CV, 2011 WL 3849487, at *9 (Tex. App.—San Antonio Aug. 31, 2011, pet. dism'd), *abrogated on other grounds by Hoskins v. Hoskins*, 497 S.W.3d 490, 493 n.4, 496 (Tex. 2016); *In re Rio Grande Xarin II, Ltd.*, Nos. 13-10-00115-CV, 13-10-00116-CV, 2010 WL 2697145, at *8 (Tex. App.—Corpus Christi–Edinburg July 6, 2010, orig. proceeding) (mem. op.); *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 230 (Tex. App.—Dallas 2010, pet. denied).

23

*Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 24 (Tex. 2014); *see also Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272–73 (7th Cir. 1976) (holding an agreement "to have any arbitration governed by the rules of the AAA incorporated those rules into the agreement"). As a result, the AAA rules are "part of" the parties' agreement as if they were set forth within the agreement itself. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007).

The AAA rules, in turn, provide that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AM. ARB. ASS'N. R-7(a) (2013). Total E&P argues that this rule merely authorizes an arbitrator to decide arbitrability when the parties have otherwise agreed that the arbitrator should do so but does not independently grant the arbitrator exclusive power to determine arbitrability or otherwise deprive the courts of that power. Some courts have agreed with this argument,[20] as does today's dissenting opinion. *See post* at ____ (BUSBY, J., dissenting).

We do not, however, because it gives inadequate meaning to the rule's declaration that the arbitrator "*shall* have *the* power to rule on . . .

---

[20] *See, e.g.*, *Taylor*, 2020 WL 1248655, at *4 (holding the AAA rule does not clearly and unmistakably delegate arbitrability to the arbitrator because it "does not say that the arbitrator has the sole authority, the exclusive authority, or anything like that"); *Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 787–90 (Cal. Ct. App. 2012) (same, reasoning that the AAA rule "tells the reader almost nothing, since a court *also* has the power to decide such issues, and nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so").

any objections with respect to the . . . arbitrability of any claim or counterclaim." Our conclusion might be different if the rule provided that the arbitrator "may have the power," or that the arbitrator "shall have power," but the rule in fact provides that the arbitrator "*shall* have *the* power." The verb "shall" in this sentence "evidences the mandatory nature of the duty imposed." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015). And the use of the definite article "the" with the singular noun "power" indicates exclusivity, limiting the delegation of "the power" to the arbitrator. *See, e.g.*, *Phx. Network Techs. (Eur.) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 615 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding that the "use of 'shall' generally indicates a mandatory requirement," and the use of the definite article "the" to describe "the venue" instead of "a" venue "indicates that the parties intended for the U.K. to be the exclusive venue").[21]

---

[21] *See also Del. Dep't of Nat. Res. & Env't Control v. Env't Prot. Agency*, 895 F.3d 90, 99 (D.C. Cir. 2018) (noting it "is 'well established' that 'the' 'particularizes the subject which it precedes' and acts as a 'word of limitation'"). As many jurisdictions have agreed, it is "a rule of law well established that the definite article 'the' particularizes the subject which it precedes" and "is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" *Brooks v. Zabka*, 450 P.2d 653, 655 (Colo. 1969). The dissenting opinion concedes that the word "can be a word of limitation," but contends it is not a word of "exclusion." *Post* at ____ (BUSBY, J., dissenting). We agree with the many court decisions holding otherwise. *See, e.g.*, *Dutcher v. Matheson*, 840 F.3d 1183, 1197 (10th Cir. 2016) (holding a "statute's use of the definite article 'the' supports the idea of focusing the inquiry on the identification of *one* state" (emphasis added)); *Colorado v. Sunoco, Inc.*, 337 F.3d 1233, 1241 (10th Cir. 2003) (holding "use of this definite article suggests there will be but *a single* 'removal action' and *a single* 'remedial action' per site" (emphases added)); *Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4 (D.C. Cir. 2000) (holding that, by "preceding the words 'remedies and procedures' with the definite article 'the,' as opposed to the more general 'a' or 'an,' Congress made clear that it

As the Sixth Circuit explained when addressing this question, "in law the expression of one thing often implies the exclusion of other things." *Blanton*, 962 F.3d at 845 (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 232–33 (2011)). In light of the rule's mandatory and exclusive language, we find that result to be more than merely implied here. The

understood [the statute's] remedies to be *exclusive*" (emphasis added)); *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1277 (Fed. Cir. 2015) (holding a "statute's use of the definite article in providing '*the* owner's remedy' and its statement that the remedy is for payment of the owner's 'entire compensation' . . . makes the remedy against the United States *exclusive*" (second emphasis added)); *Fairbrother v. Adams*, 378 A.2d 102, 104 (Vt. 1977) (holding a deed's use of the definite article "the" "implies *exclusivity*" (emphasis added)); *see generally Builders Serv. Corp. v. Plan. & Zoning Comm'n*, 545 A.2d 530, 539 (Conn. 1988) ("In statutory construction, unlike the definite article 'the,' which particularizes the words it precedes and is a word of limitation, the indefinite article 'a' has an 'indefinite or generalizing force.'"); *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 754 (Mich. 1989) (holding "the word 'a' or 'an' in front of the word 'insured' . . . unambiguously means 'any insured'"); *Nelson v. McAlester Fuel Co.*, 891 N.W.2d 126, 132 (N.D. 2017) (holding that construing the phrase "the address of the mineral interest owner . . . shown of record" to "mean any address shown of record would render meaningless the legislature's use of 'the' before 'address of the mineral interest owner'"); *BP Am. Prod. Co. v. Madsen*, 53 P.3d 1088, 1091–92 (Wyo. 2002) ("Other courts agree that, in construing statutes, the definite article 'the' is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'").

Of course, other language creating the context of the use of the definite article "the" can alter this result. *See, e.g.*, *Green Valley Special Util. Dist. v. City of Cibolo*, 866 F.3d 339, 342 (5th Cir. 2017) (holding use of "the" in a federal statute was "not decisive" in light of context), *abrogated by Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460 (5th Cir. 2020). But as the Pennsylvania Supreme Court held long ago, the "use of the definite article, classed by modern grammarians as a limiting adjective, is *presumptively* indicative of an intent different from, and therefore exclusive of, that which would have been revealed by the use of an indefinite phrase." *Fry v. Pa. Tr. Co.*, 46 A. 10, 10 (Pa. 1900) (emphasis added). Here, we have identified no contextual language within the AAA rules or within the System Operating Agreement that would rebut that presumption and require a different result.

AAA rule mandates that the arbitrator have "the power" to decide arbitrability issues and—as the Florida Supreme Court recently explained when it rejected this argument—"the power to decide *is* the power to decide." *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 705 (Fla. 2022) (quoting *Doe v. Natt*, 299 So. 3d 599, 611 (Fla. Dist. Ct. App. 2020) (Villanti, J., dissenting), *quashed and remanded sub nom. Airbnb*, 336 So. 3d at 705). We conclude that, by providing that the arbitrator "*shall* have *the* power" to determine the arbitrability of any claim, the rule clearly and unmistakably delegates that decision exclusively to the arbitrator.[22]

---

[22] The dissenting opinion suggests that an agreement to delegate arbitrability issues to an arbitrator merely grants the arbitrator "primary" authority and does not deprive courts of "the ability to vacate an arbitration award 'where the arbitrators exceeded their powers.'" *Post* at ____ (BUSBY, J., dissenting) (first quoting *First Options*, 514 U.S. at 942; then 9 U.S.C. § 10(a)(4)). It is true, of course, that courts can ultimately *review* an arbitrator's arbitrability decision, but in doing so they "must defer to an arbitrator's arbitrability decision," *First Options*, 514 U.S. at 943, and may "set that decision aside only in very unusual circumstances," *id.* at 942. When the parties agree to delegate arbitrability issues to the arbitrator, "a court possesses *no power* to decide the arbitrability issue" in the first instance. *Henry Schein*, 139 S. Ct. at 529 (emphasis added).

The dissenting opinion also suggests that, by amending rule 7(a) last year to add language providing that the arbitrator shall have the power to decide arbitrability issues "without any need to refer such matters first to a court," the AAA somehow "confirms" that the rule only grants arbitrators power to decide arbitrability issues "that may arise during an arbitration." *Post* at ____ (BUSBY, J., dissenting). Whether the amendment actually limits the arbitrator's power in that way (an issue we need not decide here), we must apply the rule as it existed before the amendment, and the lack of any such limiting language in the pre-amended rule further confirms that the rule granted arbitrators the exclusive power to decide arbitrability issues without any such limit.

27

An additional consideration helps confirm this result. As we have explained, the vast majority of federal circuit courts and other state supreme courts have reached this same conclusion. As the Delaware Supreme Court recognized when it did so, "adopting a widely held interpretation of the applicable rule" benefits our State's jurisprudence by promoting consistency and predictability, at least "as long as that interpretation is not unreasonable." *James & Jackson*, 906 A.2d at 80.[23]

That is not to say this Court should or will adopt incorrect constructions of written language simply because all or most other jurisdictions have done so. But when these parties entered into the System Operating Agreement on January 1, 2007, numerous federal circuits and other state supreme courts had already held that an agreement to arbitrate in accordance with the AAA or similar rules clearly and unmistakably delegates arbitrability issues to the arbitrator.[24] The only possible exceptions existed within the Seventh

---

[23] After adopting the majority view *as a general rule*, the Delaware Supreme Court nevertheless went on to hold that the agreement at issue there did not clearly and unmistakably delegate arbitrability to the arbitrator because it excluded claims for injunctive relief and specific performance from the arbitration agreement. *James & Jackson*, 906 A.2d at 80–81. We discuss the effect of such carve-out clauses below.

[24] *See, e.g.*, *Apollo Comput.*, 886 F.2d at 473; *Societe Generale de Surveillance*, 643 F.2d at 869; *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 211 (2d Cir. 2005); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120–21 (2d Cir. 2003); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199–1200 (2d Cir. 1996); *FSC Sec. Corp. v. Freel*, 14 F.3d 1310, 1312–13 (8th Cir. 1994); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Keeney*, 570 N.W.2d at 78; *Morrell & Co. v. Lehr Constr. Corp.*, 287 A.D.2d 257, 257 (N.Y. 2001).

Circuit.[25] Like the Sixth Circuit, we find the contemporaneous existence of these clear authorities provides a strong indication of how parties would have understood incorporation of the AAA rules when these parties entered into the System Operating Agreement. *See Blanton*, 962 F.3d at 851 (noting that "at the time [the party] signed his arbitration agreement, he not only had the benefit of the text of the agreement but also judicial precedent from both his regional circuit and a local state court telling him that the incorporation of arbitral rules can provide 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability'").

We thus hold that, as a general rule, an agreement to arbitrate disputes in accordance with rules providing that the arbitrator "shall have the power" to determine "the arbitrability of any claim" incorporates those rules into the agreement and clearly and unmistakably demonstrates the parties' intent to delegate arbitrability issues to the arbitrator.

## III.
## Limited Arbitrability and Carve-Out Clauses

Total E&P argues that this general rule does not apply here because the parties did not broadly agree to arbitrate any and all possible controversies, but instead agreed to arbitrate only certain controversies and carved out others. Specifically, Total E&P notes that the System Operating Agreement requires arbitration of disputes that "arise[] . . . out of" that Agreement, which Total E&P contends is a

---

[25] *See Reliance Ins.*, 382 F.3d at 678–79; *Miller*, 139 F.3d at 1134; *Schell*, 53 F.3d at 809; *Sorrells*, 957 F.2d at 514 n.6; *but see Taylor*, 2020 WL 1248655, at *4 (concluding that "the Seventh Circuit has not addressed the point").

narrower subset of all possible disputes "concerning," "related," or "connected" to the Agreement. According to Total E&P, because the parties agreed to arbitrate only a limited category of disputes "in accordance with the AAA rules," the rules only apply if the dispute falls within that category. In other words, according to Total E&P, rule 7(a) does not apply unless the dispute in fact "arises out of" the System Operating Agreement, so courts must first make that determination before the rule can apply and require the arbitrator to make it.

In response, MP Gulf argues that "arising out of" encompasses a sufficiently broad array of disputes and, in any event, the System Operating Agreement broadly expands the universe of arbitrable claims far beyond those "arising out of" the Agreement by expressly including disputes that arise out of "the alleged breach" of the Agreement, "any tort in connection therewith," or "the refusal to perform the whole or any part thereof." The court of appeals generally agreed with MP Gulf, concluding that, "by its plain language, the arbitration provision is much broader than Total claims." 647 S.W.3d at 101.

We need not decide whether the arbitration agreement is "sufficiently" broad, however, because we conclude that any limitation contained within these parties' arbitration agreement does not affect the agreement's clear and unmistakable delegation of arbitrability issues to the arbitrator. Although we agree that parties *can* contractually limit their delegation of arbitrability issues to only certain claims and controversies, we do not agree that the arbitration clause contained within the System Operating Agreement accomplishes that result.

30

As mentioned above, other courts have reached various conclusions on this issue. Some have concluded that a broad agreement to arbitrate any and all disputes, *even without incorporating the AAA or similar rules*, clearly and unmistakably delegates arbitrability to the arbitrator because "any and all" includes a dispute over whether a claim is arbitrable.[26]

Others have held that an agreement clearly and unmistakably delegates arbitrability issues to the arbitrator only if it *both* incorporates the AAA or similar rules *and* broadly requires arbitration of any and all disputes between the parties, without carving out any particular disputes.[27] These courts generally agree with Total E&P's argument

---

[26] *See, e.g.*, *Shaw Grp.*, 322 F.3d at 120–21 (stating that agreement to submit "all disputes . . . concerning or arising out of" the agreement to arbitration clearly and unmistakably delegated arbitrability to the arbitrator); *Bybyk*, 81 F.3d at 1199 ("The words 'any and all' are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration."); *but see McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997) (holding a "broadly worded" arbitration clause did not delegate arbitrability to the arbitrator).

[27] *See Shaw Grp.*, 322 F.3d at 124–25 ("In sum, because the parties' arbitration agreement is broadly worded to require the submission of 'all disputes' concerning the Representation Agreement to arbitration, and because it provides for arbitration to be conducted under the rules of the ICC, which assign the arbitrator initial responsibility to determine issues of arbitrability, we conclude that the agreement clearly and unmistakably evidences the parties' intent to arbitrate questions of arbitrability."); *James & Jackson*, 906 A.2d at 80–81 (holding that when an agreement "does not generally refer all controversies to arbitration, . . . something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator"); *Nethery*, 257 So. 3d at 274–75 (holding incorporation of the AAA rules did not delegate arbitrability because the agreement carved out claims for injunctive relief and specific performance, even though the plaintiff did not assert such claims); *see also* Texas cases cited *supra* note 19.

that the AAA rules only apply—and thus only require the arbitrator to decide arbitrability—if the parties have in fact agreed to arbitrate their dispute.

The Second Circuit, for example, reasoned that when an agreement requires arbitration of only certain claims, while carving out others, the issue of "whether the AAA Rules, including Rule 7(a), apply turns on the conditional premise that the dispute falls within" that category of claims. *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 320–21 (2d Cir. 2021). "If it does not, then the AAA Rules do not govern and no delegation of authority to the arbitrator to resolve questions of arbitrability arises." *Id.* at 321. In that court's view, anything other than a broad, all-encompassing arbitration agreement cannot clearly and unmistakably delegate arbitrability to the arbitrator because the "narrow scope of the arbitration provision . . . obscures the import of the incorporation of the AAA Rules and creates ambiguity as to the parties' intent to delegate arbitrability to the arbitrator." *Id.*

As mentioned, the Fifth Circuit reached a similar result in *Henry Schein*, concluding that because the agreement there excepted actions seeking injunctive relief from the agreement to arbitrate, it also at least potentially excepted such claims from the parties' agreement to have the arbitrator decide whether claims were subject to arbitration. 935 F.3d at 281–82. And as explained, the Supreme Court agreed to review that holding (while at the same time declining to review the question of whether incorporation of the AAA rules delegates arbitrability to the arbitrator in the first place), but later—after oral argument—dismissed the petition as improvidently granted. *See Henry Schein*, 141 S. Ct. at

107 (granting certiorari); *Archer & White Sales*, 141 S. Ct. at 113 (denying conditional cross-petition); *Henry Schein*, 141 S. Ct. at 656 (dismissing petition as improvidently granted).

We reject this position for at least two reasons. First, as the Florida Supreme Court recently explained, holding that rule 7(a) only applies if a court first determines that the claim is subject to the arbitration agreement would render the rule essentially meaningless. *Airbnb*, 336 So. 3d at 705. Because "[t]he question of whether a claim is arbitrable must, by necessity, be determined before the commencement of arbitration," a rule that requires the arbitrator to determine whether the claim is arbitrable "can only apply at the outset of [the] claim, not after the arbitration has already commenced." *Id.* (quoting *Natt*, 299 So. 3d at 611 (Villanti, J., dissenting)). A rule that requires arbitrators to determine arbitrability only after a court has already determined arbitrability essentially has no effect at all.

But second, and more importantly, we reject Total E&P's position because it ignores the severability rule and conflates the parties' agreement to arbitrate disputes with their agreement to delegate arbitrability issues to the arbitrator. In reaching this conclusion, we are persuaded by the reasoning of several other courts, including the United States Supreme Court.

In *Oracle*, for example, the parties' agreement provided that (1) "any claim arising out of the Source License shall be settled by arbitration," but (2) the courts shall have exclusive jurisdiction over "any dispute relating to [a] party's Intellectual Property Rights or with respect to [a party's] compliance with the TCK license," and

(3) arbitration "shall" be administered by the AAA and "in accordance with" the UNCITRAL rules. 724 F.3d at 1075, 1077. Myriad argued that the agreement delegated the arbitrability issue to the arbitrator because the parties' dispute arose out of the Source License, while Oracle argued that the agreement required the court to decide the arbitrability issue because the dispute related to intellectual-property rights and the TCK License. *Id.* at 1075–76. Although both parties were technically correct (that is, their dispute both arose out of the Source License and related to the TCK License), the Ninth Circuit concluded that, by requiring arbitration in accordance with the UNCITRAL rules, the agreement clearly and unmistakably required the arbitrators to decide the arbitrability issue. *Id.* at 1076. In the court's view, Oracle's argument that the carve-out for disputes related to intellectual-property rights and the TCK License prevented a clear and unmistakable delegation of arbitrability issues to the arbitrator "conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Id.*

Similarly, in *Ally Align Health*, the parties' agreement (1) required arbitration of all disputes, and (2) required the arbitrator to "adopt and follow" the AAA rules, but (3) provided that any party could seek equitable relief in a court of competent jurisdiction. 574 S.W.3d at 755. When Signature Advantage filed suit seeking both legal and equitable relief, Ally Align moved to compel arbitration of all claims. *Id.* The trial court granted the motion as to the claims for legal relief but denied it as to claims for equitable relief. *Id.* The Kentucky Supreme Court reversed, holding that the trial court should have compelled

arbitration of all of the claims because the "carve-out provision for certain claims to be decided by a court does not negate the clear and unmistakable mandate of the AAA's Rules that the initial arbitrability of claims is to be determined by the arbitrator, not the courts." *Id.* at 754–55. Relying in part on *Oracle*, the court held that the issue of "whether Signature Advantage asserts a true claim for equitable relief or such assertion is a facade to avoid arbitration is a determination to be made by the arbitrator per the contract's adoption of the AAA's Rules." *Id.* at 757. Holding otherwise, the court explained, "would conflate the two separate and distinct questions of (1) who decides what claims are arbitrable with (2) what claims are arbitrable." *Id.* at 758. In the court's view, the parties agreed (by incorporating the AAA rules) that all disputes over arbitrability would be resolved by the arbitrators, and "the effect of the carve-out provision is to state that if an arbitrator determines that Signature Advantage has asserted a claim for equitable relief that is exempted from arbitration by the carve-out provision in the contract, then the arbitrator must refer that claim to a court if Signature Advantage so desires." *Id.*

The Sixth Circuit agreed with this reasoning in *Blanton*, which involved an agreement to arbitrate "a wide array of issues related to [the plaintiff's] employment" and to do so "in accordance with" the AAA rules. 962 F.3d at 844–45. The employee argued that because the agreement did not cover all possible claims between the parties, "a court must first determine whether the agreement covers a particular claim before the arbitrator has any authority to address its jurisdiction" because the incorporation of the AAA rules grants the arbitrator "the power to

determine the scope of the agreement *only* as to claims that fall within the scope of the agreement." *Id.* at 847. The court rejected that argument because it "would render the AAA's jurisdictional rule superfluous." *Id.* The court reasoned that, by generally requiring arbitration in accordance with the AAA rules, the agreement did not carve claims out of "the provision that incorporates the AAA Rules." *Id.* at 848. "So the carveout goes to the *scope of the agreement [to arbitrate]*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of 'arbitrability.'" *Id.* Notably, the Supreme Court denied the employee's petition for writ of certiorari on January 25, 2021, the same day it dismissed the *Henry Schein* petition as improvidently granted. *See Piersing*, 141 S. Ct. at 1268.

Most recently, the Eleventh Circuit also agreed with this reasoning in *WasteCare Corp. v. Harmony Enterprises, Inc.*, 822 F. App'x 892 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1383 (2021). The arbitration agreement at issue in *WasteCare* provided that "any controversy or claim (excepting claims as to which party may be entitled to equitable relief) . . . shall be settled by arbitration in accordance with the then current commercial rules of arbitration of the [AAA]." *Id.* at 894. When WasteCare filed suit seeking equitable relief, Harmony moved to compel arbitration on the ground that WasteCare's claims were actually breach-of-contract claims "mischaracterized" as equitable claims. *Id.* The district court denied the motion, but the Eleventh Circuit reversed, holding that by agreeing to arbitrate in accordance with the AAA rules, the parties "clearly and unmistakably delegated questions of

arbitrability to an arbitrator." *Id.* at 895–96. The court concluded that the agreement's "carve-out for equitable relief does not affect this analysis" because, "[a]lthough WasteCare's claims may indeed be equitable ones, that 'confuses the question of who decides arbitrability with the separate question of who prevails on arbitrability.'" *Id.* at 896 (quoting *Henry Schein*, 139 S. Ct. at 531). Because "the parties expressly delegated the arbitrability issue to an arbitrator," the court concluded, "the arbitrator must decide whether WasteCare can litigate its claims in district court." *Id.*

The Eleventh Circuit's reliance on the Supreme Court's decision in *Henry Schein* is particularly instructive. The agreement in *Henry Schein* provided: "Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [Henry Schein]), shall be resolved by binding arbitration in accordance with the arbitration rules of the [AAA]." 139 S. Ct. at 528. When Archer and White sued asserting antitrust violations and seeking both damages and injunctive relief, Henry Schein moved to compel arbitration. *Id.* Archer and White objected, "arguing that the dispute was not subject to arbitration because Archer and White's complaint sought injunctive relief, at least in part." *Id.*

Henry Schein argued that the agreement's incorporation of the AAA rules required the court to refer the case to arbitration so that the arbitrators could resolve the arbitrability dispute, but Archer and White countered by arguing that Henry Schein's contention that the agreement delegated arbitrability to the arbitrators was "wholly

37

groundless." *Id.* The district court agreed, and the Fifth Circuit affirmed, but the Supreme Court reversed, holding that a court must enforce an agreement that delegates arbitrability to the arbitrator even if the court believes that the arbitrability argument is wholly groundless. *Id.*

The Supreme Court made it clear in *Henry Schein* that it was expressing "no view about" whether the agreement "in fact delegated the arbitrability question to an arbitrator" because the Fifth Circuit had not yet decided that issue. *Id.* at 531. But as the Eleventh Circuit observed in *WasteCare*, the district court in *Henry Schein* thought the argument that the claims were arbitrable was wholly groundless precisely because the claims "clearly fit into the carve-out provision" and thus were not subject to the arbitration agreement. *WasteCare*, 822 F. App'x at 896. Relying on the wholly groundless exception, the district court decided the arbitrability issue in *Henry Schein* based on the existence of the carve-out provision. By doing so, the Supreme Court explained, the district court "confuse[d] the question of who decides arbitrability with the separate question of who prevails on arbitrability." *Henry Schein*, 139 S. Ct. at 531.

We find these cases and others like them[28] persuasive. As the Supreme Court emphasized in *Henry Schein*, our analysis of this issue

---

[28] *See Arnold*, 890 F.3d at 552–53 (holding incorporation of the AAA rules clearly and unmistakably delegated arbitrability to the arbitrator even though the agreement excluded claims that qualified for disposition in small-claims court, at least when the party did not contend that his claims fit within that exclusion); *TETRA Techs., Inc.*, 424 S.W.3d at 308, 310–11 (holding a broad clause incorporating the AAA rules and requiring arbitration "to the exclusion of any court of law" clearly and unmistakably delegated arbitrability to the arbitrator, despite a severability clause and default provision "allowing resort to all remedies at law or in equity").

must carefully distinguish between "the question of who decides arbitrability" and "the separate question of who prevails on arbitrability"—that is, the question of whether the claims must be arbitrated. *Id.* As explained above, because an agreement to arbitrate is severable from a broader contract that contains it, courts must require arbitration of challenges to the broader contract but must themselves decide challenges to the arbitration agreement unless the parties clearly and unmistakably agreed otherwise. *See Rent-A-Ctr.*, 561 U.S. at 70–71; *Baby Dolls*, 642 S.W.3d at 586. But as the Supreme Court confirmed in *Rent-A-Center*, this severability rule applies not only to a broader contract and an arbitration agreement contained within it, but also to an arbitration agreement and a provision contained within it that delegates arbitrability issues to the arbitrators. *Rent-A-Cntr.*, 561 U.S. at 71–72.

The parties in *Rent-A-Center* entered into a stand-alone agreement to arbitrate all disputes arising out of an employment relationship. *Id.* at 65–66. That agreement included a delegation provision requiring the arbitrator to resolve any dispute over the arbitration agreement. *Id.* at 66. When the employee later sued to challenge the arbitration agreement, asserting that it was unconscionable and therefore unenforceable, the district court held that only the arbitrator could hear that claim, but the Ninth Circuit reversed, holding that the district court had to decide the unconscionability claim as a threshold issue because, if the agreement was in fact unconscionable, the employee could not have "meaningfully assent[ed]" to it or to the delegation provision contained within it. *Id.* at 67.

The Supreme Court reversed, holding that because the provision delegating the arbitrability issue to the arbitrator was severable from the broader arbitration agreement, and because the employee did not challenge the validity of the delegation provision itself, the court was required to enforce the delegation provision and require the arbitrator to decide whether the parties had agreed to arbitrate the unconscionability claim. *Id.* at 71–72. The Court explained that the fact that the broader contract was itself an arbitration agreement "makes no difference" in the proper application of the severability rule because the application of that rule "does not depend on the substance of" the broader contract. *Id.* at 72. Because the employee challenged only the broader arbitration agreement and not the delegation provision itself, the court was required to enforce the delegation provision and leave it to the arbitrator to decide whether the unconscionability claim rendered the arbitration agreement unenforceable. *Id.*

As applied here, *Rent-A-Center* teaches that, under the severability rule, not only is the broader contract (the System Operating Agreement) severable from the provision within it requiring arbitration of claims arising out of that Agreement (article 16.16), but that arbitration provision is in turn severable from the provision within it that delegates arbitrability issues to the arbitrators (the provision incorporating the AAA rules). So we must carefully distinguish between the parties' disputes over (1) the scope of the arbitration provision (what

40

it includes and carves out) and (2) the delegation provision (who decides the scope of the arbitration provision).[29]

[29] The dissenting opinion contends that *Rent-A-Center* provides no guidance here because the agreement in that case did not reference or incorporate the AAA rules and the parties here challenge only the scope—as opposed to the validity—of their arbitration agreement. *Post* at ___, ____ (BUSBY, J., dissenting). But the incorporation of the AAA rules, as we have explained, merely constitutes a means by which parties can clearly and unmistakably agree to delegate arbitrability issues to the arbitrator. Whether they agree to such a delegation by incorporating the AAA rules (as here) or by expressly stating that agreement within their contract (as in *Rent-A-Center*) does not affect the severability of the delegation agreement from the arbitration agreement that contains it. Nor does the fact that Total E&P challenges the scope, as opposed to the validity, of the arbitration agreement affect the analysis because "[a]pplication of the severability rule does not depend on the substance of the remainder of the contract." *Rent-A-Ctr.*, 561 U.S. at 72. Arbitrability issues include both "questions regarding the existence of a legally binding and valid arbitration agreement, as well as questions regarding the scope of a concededly binding arbitration agreement," and courts must decide both types of questions unless the parties have agreed to delegate arbitrability issues to the arbitrator. *Id.* at 78 (Stevens, J., dissenting). But both types of issues are questions of arbitrability, which *Rent-A-Center* teaches are severable from the question of whether the parties delegated those arbitrability issues to the arbitrator.

The dissenting opinion also asserts that this case meaningfully differs from *Rent-A-Center* and the other cases we follow because the agreement here contains expressly conditional "If" language that creates a "condition precedent to arbitrators acquiring the power to decide anything at all." *Post* at ____ (BUSBY, J., dissenting). We disagree for two reasons. First, the "If" language in the System Operating Agreement is not as expressly conditional as the dissenting opinion suggests. In article 16.16, the agreement first provides, without using any conditional language, that "[a]ny dispute between the Parties concerning this Agreement . . . shall be resolved under the mediation *and binding arbitration procedures* of this Article 16.16." [Emphasis added.] Article 16.16 then requires the parties to attempt to resolve any dispute through negotiations and, "[i]f any Party believes further negotiations are futile," then through mediation. Article 16.16 then ends by providing: "If the dispute has not been resolved pursuant to mediation within sixty (60) days after initiating the mediation process, the dispute shall be resolved through

binding arbitration, as follows." What "follows" first is article 16.16.1, which provides, "If any dispute or controversy arises between the Parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof, and the Parties are unable to agree with respect to the matter or matters in dispute or controversy, the same shall be submitted to arbitration before a panel of three (3) arbitrators in accordance with the rules of the AAA and the provisions in this Article 16.16." And then article 16.16.2 provides, without including any conditional language, that "[t]he procedure of the arbitration proceedings shall be in accordance with the Commercial Rules of the AAA." Reading articles 16.16, 16.16.1, and 16.16.2 together in context reveals the parties' agreement that "any" unresolved controversy concerning or arising out of the System Operating Agreement would be resolved through arbitration in accordance with the AAA rules and procedures.

Second, and more importantly, even if we focus on the "If" language contained only within article 16.16.1, that language is no more or less conditional than the language contained within the agreements at issue in the decisions we follow here. In *Oracle*, for example, the effect of the parties' agreement to arbitrate "any claim arising out of the Source License" and to grant courts exclusive jurisdiction over any "dispute relating to . . . Intellectual Property Rights" was that courts would have jurisdiction only "if" the dispute involved Intellectual Property Rights. 724 F.3d at 1076. Similarly, in *Ally Align*, the agreement requiring arbitration of all disputes but permitting the parties to seek equitable relief in court could only be construed to mean that a party could sue in court only "if" it sought equitable relief. 574 S.W.3d at 757. In *Blanton*, the agreement to arbitrate only certain issues meant that the parties did not have to arbitrate "if" the dispute involved other issues. 962 F.3d at 848. And in *WasteCare*, the agreement to arbitrate any claim "excepting claims as to which party may be entitled to equitable relief" meant that the parties did not have to arbitrate "if" the claim could support equitable relief. 822 F. App'x at 894. As here, those agreements required any arbitration to be conducted in accordance with the AAA or similar rules, yet the courts rejected the argument that those rules applied only "if" the claims at issue fell within the scope of the arbitration agreement. Instead, they agreed with the Supreme Court's explanation in *Henry Schein* that applying the scope of the limited or conditional arbitration agreement to the delegation agreement would violate the severability rule and thereby "conflate" or "confuse" the question of which claims are arbitrable with the separate question of who decides arbitrability. *See Oracle*, 724 F.3d at 1076; *Ally Align*, 574 S.W.3d at 758; *WasteCare*, 822 F. App'x at 896 (quoting *Henry Schein*, 139 S. Ct. at 531).

Here, the delegation provision is the clause that incorporates the AAA rules, and nothing in that provision or in those rules limits the scope of the delegation. Total E&P contends that the arbitration clause limits the scope of the delegation by limiting the claims that must be arbitrated to those "arising out of" the Agreement. But under the severability rule, our conclusion that the delegation provision (the incorporation of the AAA rules) clearly and unmistakably delegates arbitrability issues to the arbitrator requires that we enforce that provision as written and allow the arbitrator to decide the scope of the arbitration provision. *Rent-A-Ctr.,* 561 U.S. at 71–72. As the Sixth Circuit explained in *Blanton*:

> [T]o the extent that [the] arbitration agreement carves out certain claims from arbitration, it does so from the [arbitration] agreement in general, not from the provision that incorporates the AAA Rules. So the carveout goes to the *scope of the [arbitration] agreement*—a question that the agreement otherwise delegates to the arbitrator—not the *scope of the arbitrator's authority* to decide questions of "arbitrability."

962 F.3d at 848.[30]

---

[30] *See generally* Tamar Meshel, *"A Doughnut Hole in the Doughnut's Hole": The Henry Schein Saga and Who Decides Arbitrability*, 73 RUTGERS U.L. REV. 83, 97 (2020) ("According to the delegation principle, . . . a challenge to the validity of the delegation clause itself is to be resolved by the court while a challenge to the arbitration agreement in which the delegation clause is contained is to be resolved by the arbitrator."); *see also* Tamar Meshel, *Digging A Deeper Hole in the Doughnut's Hole: SCOTUS and Who Decides Arbitrability*, 2021 U. ILL. L. REV. ONLINE 158, 165 (2021) ("[I]f the court finds that incorporating the AAA rules constitutes clear and unmistakable evidence that

We thus conclude that the fact that the parties' arbitration agreement may cover only some disputes while carving out others does not affect the fact that the delegation agreement clearly and unmistakably requires the arbitrator to decide whether the present disputes must be resolved through arbitration.

## IV.
## The Applicable Agreement

Having concluded that the delegation provision contained within the arbitration agreement, which in turn is contained within the System Operating Agreement, clearly and unmistakably requires the arbitrator to decide questions of arbitrability, we are left with Total E&P's argument that the System Operating Agreement does not apply in this case at all. More specifically, Total E&P contends that the System Operating Agreement's arbitration provision is irrelevant here because it filed this suit seeking only a construction of the Cost Sharing Agreement, which does not contain an arbitration clause.

The parties' arguments on this point are extensive and detailed.[31] But we need not address them all because we again agree with the court

---

the parties intended to delegate arbitrability questions, the court should refer the scope question to the arbitrator.").

[31] Total E&P contends, for example, that the System Operating Agreement does not incorporate the Cost Sharing Agreement as an exhibit and the Cost Sharing Agreement is therefore not part of the "Agreement" to which the System Operating Agreement's arbitration provision refers. MP Gulf notes, however, that the Cost Sharing Agreement expressly incorporates the System Operating Agreement "for all purposes" and makes it a "part of" the Cost Sharing Agreement, and it contends that the arbitration agreement is therefore "part of" the Cost Sharing Agreement. In response, Total E&P contends that, even if the System Operating Agreement is "part of" the Cost

of appeals, which concluded that Total E&P's position "ignores the reasoning of the arbitration provision and that arbitrability, including which agreement is at issue, has been delegated to the arbitrators." 647 S.W.3d at 102 n.4; *see also id.* at 102 n.5 ("[W]hether the dispute arises under the Chinook Agreement or the [System Operating Agreement], under this broad arbitration provision, is a determination of arbitrability to be made by the arbitrator.").

We recognize that because arbitration is a matter of contract, courts must decide in the first instance whether a valid arbitration agreement exists. *Henry Schein*, 139 S. Ct. at 530. Total E&P argues that no valid arbitration agreement exists as to the claims it has asserted in this suit. *See, e.g.*, *Field Intel. Inc v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351, 356–57 (3d Cir. 2022) (holding that a court was required to decide whether parties superseded a valid arbitration agreement by entering into a subsequent agreement). But this argument collapses two separate inquiries.

---

Sharing Agreement, it still only requires AAA arbitration of claims "arising out of" the System Operating Agreement, which does not include the Cost Sharing Agreement.

Meanwhile, MP Gulf contends that Total E&P's claims nevertheless "arise out of" the System Operating Agreement because Total E&P filed this suit only as a defense against MP Gulf's demand that Total E&P pay $41 million, which MP Gulf contends is an obligation the System Operating Agreement imposes. According to MP Gulf, these claims ultimately arise out of the System Operating Agreement because it is that Agreement, not the Cost Sharing Agreement, that "authorized [MP Gulf] to invoice the $41 million in costs, obligates Total [E&P] to pay them, and provides [MP Gulf's] remedies when Total [E&P] 'fails to pay.'" Although Total E&P agrees that its "ultimate payment obligation is enforced through the System Operating Agreement," it contends that the claims it filed here—to construe the Cost Sharing Agreement—nevertheless do not arise out of the System Operating Agreement.

"A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement." *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). This is a two-step process, requiring the party to "first establish the existence of an arbitration agreement" and then establish that "the arbitration agreement covers" the claims asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001). Importantly, an arbitration agreement does not "have to be included in each of the contract documents it purports to cover," and "[s]o long as the parties agreed to arbitrate this dispute, it does not matter which document included that agreement." *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005); *see also Romero v. Herrera*, No. 04-18-00845-CV, 2019 WL 2439107, at *3 (Tex. App.—San Antonio June 12, 2019, no pet.) ("[T]he scope of an arbitration agreement turns on its terms, not on the particular written instrument in which the arbitration agreement appears.").

We have resolved the first inquiry here by concluding that a valid arbitration agreement exists between these parties. Total E&P's argument focuses on the second inquiry, contending that the valid arbitration agreement does not apply to the claims it asserted in this suit because those claims do not arise out of the agreement that contains the valid arbitration agreement. This argument challenges the scope of the arbitration agreement, which (as we have explained) courts must resolve *unless* the parties have clearly and unmistakably delegated that issue to the arbitrators. *Baby Dolls*, 642 S.W.3d at 586; *Robinson*,

46

590 S.W.3d at 525, 532.[32] And as we have explained, these parties have. We therefore agree with the court of appeals that the parties' agreement to delegate arbitrability issues requires the arbitrator to decide whether their arbitration agreement requires arbitration of the claims asserted in this suit.[33]

## V.
## Conclusion

We hold that the parties clearly and unmistakably delegated to the AAA arbitrator the decision of whether the parties' controversy must be resolved by arbitration. We express no opinion on the merits of the parties' controversy or on whether the arbitrator or the courts must resolve them. We therefore affirm the court of appeals' judgment.

Jeffrey S. Boyd
Justice

---

[32] *See also Jody James Farms*, 547 S.W.3d at 631; *Henry Schein*, 139 S. Ct. at 530; *Howsam*, 537 U.S. at 83; *First Options*, 514 U.S. at 944; *AT&T Techs.*, 475 U.S. at 649.

[33] In affirming the court of appeals' judgment on this ground, we do not reach the "alternative" ground that JUSTICE BLAND addresses in her concurring opinion. She would affirm even if the parties did not agree that the arbitrator must resolve arbitrability issues because, in her view, the parties did agree to arbitrate the underlying controversies in this case. *Post* at ___ (BLAND, J., concurring). But if—as we conclude—the parties delegated arbitrability issues to the arbitrator, this Court "possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529. To be clear, we do not hold that the parties agreed to arbitrate their underlying controversy. Because the parties delegated that issue to the arbitrator, the arbitrator must make that determination.

47

**OPINION DELIVERED:** April 14, 2023